LONNIE D. TADLOCK v. C. L. SNIPES MOTORS, INC. AND FORD MOTOR COMPANY, INC.

No. 778DC97

(Filed 7 December 1977)

1. **Uniform Commercial Code § 15— automobile—express warranty of parts— replacement or repair allowed—directed verdict for dealer proper**

    In an action to recover for fire damages to plaintiff's automobile, the trial court did not err in allowing defendant Ford's motion for directed verdict, since the warranty given by Ford limited its liability to repair or replacement of defective parts; plaintiff's evidence with respect to defective parts at most tended to show a defective junction box; and plaintiff presented no evidence tending to show the cost of repair to, or replacement of, that part.

2. **Fires § 3— fire damages to automobile—defendant's negligent repairs as cause — sufficiency of evidence**

    In an action to recover for fire damages to plaintiff's automobile, the trial court erred in granting a directed verdict for defendant who sold plaintiff the automobile where the evidence tended to show that plaintiff's automobile caught fire; the fire emanated from behind the dashboard; there was no fire damage under the hood, but the insulation on the wires under the dash was destroyed and the wires were melted together; and some twelve days prior to the fire an employee of defendant altered the electrical system on the car by splicing the wires leading to and from a junction box, thereby passing said box.

APPEAL by plaintiff from *Nowell, Judge.* Judgment entered 29 September 1976 in District Court, WAYNE County. Heard in the Court of Appeals 17 November 1977.

Plaintiff instituted this action to recover for fire damages to his automobile. In his complaint he alleged that the damages resulted from negligence of defendant Snipes and a breach of warranty on the part of defendant Ford. In their answers, defendants denied liability.

Plaintiff presented evidence summarized as follows:

Around 1 August 1974 he purchased a 1974 Ford Mustang, with 7,000 miles showing on the odometer, from defendant Snipes. He returned the car to defendant Snipes four times because of electrical problems including misfunctioning gauges, a misfunctioning radio and a burned box under the hood. The last time the car was returned was on 11 November 1974 when, among other things, defendant Snipes removed and kept the radio for repairs.

While driving the car on 12 November 1974 plaintiff observed smoke coming from under the dashboard. He stopped the car and found fire coming from under the speedometer, gear stick and dash. The car had been driven less than 12,000 miles at the time of the fire and no one other than personnel of defendant Snipes had worked on the car. Two mechanic friends of plaintiff had examined the car but they did not work on it.

After plaintiff discovered the fire he called the Goldsboro Fire Department. The responding fireman stated that to the best of his knowledge the fire was coming from the middle of the dash; that after extinguishing the fire, he found no fire damage under the hood but found the insulation on the wires under the dash melted off and the wires melted together.

One of plaintiff's mechanic friends, who qualified as an expert on motor vehicle electrical systems, testified that he examined the car several times; that he determined that something was wrong with it but did not determine just what it was; that the amp gauge worked incorrectly and there was a junction box on the fender that was burned out; that he observed the car in early November after it had been worked on by defendant Snipes; at that time he determined that defendant Snipes had bypassed the junction box on the fender by joining two wires together; and

that it was "very possible" that a fire in an automobile could be caused by bypassing a safety junction box and joining two wires.

Plaintiff introduced into evidence the written warranty provided by defendant Ford.

At the close of plaintiff's evidence the court allowed defendant Ford's motion for a directed verdict but overruled a similar motion by defendant Snipes.

Defendant Snipes offered evidence which tended to show:

Its records disclose that plaintiff returned the car for repairs on three occasions. On 25 September 1974 he returned it to have a broken rearview mirror repaired. On 1 November 1974 he returned it to have burned wires under the hood checked. On 11 November 1974 he returned the car for repairs to the radio, to the charging system and some air vents.

William Wilkins, an employee of defendant Snipes, who qualified as an expert in automobile electrical systems, testified that he worked on plaintiff's vehicle; that the junction box referred to by plaintiff's witness is simply a connection for two wires; that no safety hazard is caused by splicing the wires; that the junction box is not a safety feature; that he spliced the wires around the junction box on or about 1 November 1974; that on 11 November 1974 he removed the radio and that the charging system was working properly; that he did not smell smoke and did not find any problem with the electrical wiring system.

At the conclusion of all the evidence, the court allowed defendant Snipes' motion for directed verdict. From judgments dismissing his actions, plaintiff appeals.

*Barnes, Braswell & Haithcock, by W. Timothy Haithcock, for plaintiff appellant.*

*Langston & Langston, by W. Dortch Langston, Jr., for defendant appellee C. L. Snipes Motors, Inc.*

*Taylor, Allen, Warren & Kerr, by Robert D. Walker, Jr., and Gordon C. Woodruff for defendant appellee Ford Motor Company.*

BRITT, Judge.

Plaintiff contends first that the court erred in allowing defendant Ford's motion for a directed verdict. We find no merit in this contention.

It will be noted that plaintiff's claim against defendant Ford is based solely on breach of an express warranty. The warranty made by defendant Ford and which plaintiff introduced into evidence and relies upon, provides in pertinent part:

## WARRANTY

## FACTS BOOKLET

### 1974 Model Capri, Comet, Courier, Maverick, Mustang II and Pinto Warranty

Ford and the Selling Dealer jointly warrant for each 1974 model passenger car or light truck (P400 or lower series) sold by Ford that for the earliest of 12 months or 12,000 miles, from either first use or retail delivery, the Selling Dealer will repair or replace free of charge any part except tires that is found to be defective in factory materials or workmanship under normal use in the United States or Canada.

All Ford and the Selling Dealer require is that you properly operate, maintain and care for your vehicle, and that you return for warranty service to your Selling Dealer's place of business or to any authorized Ford or Lincoln-Mercury dealer if you are traveling, have moved a long distance or need emergency repairs. Warranty repairs will be made with Ford Authorized Service or Remanufactured Parts.

To the extent allowed by law, this WARRANTY IS IN PLACE OF all other warranties, express or implied, including ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS. Under this warranty, repair or replacement of parts is the only remedy.

* * *

Under this warranty, repair or replacement of parts is the only remedy, and loss of use of the vehicle, loss of time,

Tadlock v. Motors, Inc.

inconvenience, commercial loss or consequential damages are not covered.

In addition, damage from accidents, fire or other casualty, misuse, overloading, negligence, or racing, or failures caused by parts not supplied by Ford or by modification of any part of the vehicle are not covered by the warranty.

We construe said warranty strictly within the context of the pleadings and evidence in the instant case. We note again that plaintiff pled the warranty and relies upon it in his claim against defendant Ford. Since he does not attack the validity of the warranty, we do not consider that question but, for the purposes of this case, proceed on the assumption that the warranty is valid. See Rule 10, Rules of Appellate Procedure, 287 N.C. 671, 698.

[1] The warranty limits Ford's liability to repair or replacement of "any part except tires that is found to be defective in factory materials or workmanship under normal use in the United States or Canada. *** Under this warranty, repair or replacement of parts is the only remedy". With respect to defective parts, plaintiff's evidence at most tended to show a defective junction box but he presented no evidence tending to show the cost of repair to, or replacement of, that part. We hold that the court did not err in allowing defendant Ford's motion for directed verdict.

[2] Plaintiff contends next that the court erred in granting the motion of defendant Snipes for a directed verdict. We think this contention has merit and hold that the evidence was sufficient to take the case against defendant Snipes to the jury.

The evidence clearly showed that plaintiff's automobile caught fire; that the fire emanated from behind the dashboard; that there was no fire damage under the hood but the insulation on the wires under the dash was destroyed and the wires were melted together; and that some twelve days prior to the fire an employee of defendant Snipes altered the electrical system on the car by splicing the wires leading to and from a junction box, thereby bypassing said box.

Plaintiff's witness Cartrette, who qualified as an expert on motor vehicle electrical systems, testified that he examined the car prior to 1 November 1974 and found that the junction box had "burned up one time"; that he advised plaintiff to return the car

to defendant Snipes; that thereafter he examined the car again and saw where the junction box had been bypassed; and that in his opinion it was "very possible" that bypassing the junction box as was done on plaintiff's car could cause a fire in the automobile.

We think the court properly permitted witness Cartrette to state his opinion aforesaid. In *Teague v. Power Co.*, 258 N.C. 759, 129 S.E. 2d 507 (1963), a case involving a fire allegedly caused by electrical wiring, Justice (now Chief Justice) Sharp said (page 763): ". . . However, an expert in a particular field may give his opinion, based on personal observation or in answer to a properly framed hypothetical question, that a particular event or situation could or could not have produced the result in question. Stansbury, Evidence, Section 137." *See also Mann v. Transportation Company*, 283 N.C. 734, 198 S.E. 2d 558 (1975), and *Lawrence v. Insurance Co.*, 32 N.C. App. 414, 232 S.E. 2d 462 (1977).

It is true that defendant's witness Wilkins, who also qualified as an expert in automobile electrical systems, stated an opinion contrary to that given by plaintiff's witness Cartrette. But it was the province of the jury to resolve this conflict in the testimony and not that of the court.

Finally, plaintiff contends the court erred in not allowing the witness Daughetry to state in the presence of the jury that he determined that the cause of the fire was a shortage in the wiring. We find no merit in this contention for the reason that plaintiff did not lay a proper foundation for the witness to state the cause of the fire. See Stansbury's N.C. Evidence (Brandis Rev.), § 133.

As to defendant Ford, the judgment is affirmed.

As to defendant Snipes, the judgment is reversed and the cause will be remanded for further proceedings.

Judges PARKER and VAUGHN concur.