### CHARLES RAULF, ADMR. OF FRANK RAULF, v. ELIZABETH CITY LIGHT AND POWER COMPANY.

(Filed 13 November, 1918.)

**1. Electricity—Negligence—Evidence—Trials—Questions for Jury.**

Evidence tending to show that defendant, supplying electricity for motor power, was under contract to furnish a drug store with electricity, over a wire carrying a safe voltage, for operating mixing appliances for "soft drinks" at a fountain, and that plaintiff's intestate, employed there, was killed by a heavy voltage of electricity coming suddenly upon the wire from the primary wire of the defendant, because of insufficient insulation of the outside wires, misplacing of the poles, and delay in cutting out the current, etc., is held sufficient upon the issue of defendant's actionable negligence.

**2. Evidence—Impressions—Collective—Facts—Electricity.**

Where there is evidence that the defendant's wires, heavily charged with a deadly current of electricity, came in contact with another and harmless wire of the defendant, and caused the death of the plaintiff's intestate, it is competent for an eye-witness to testify that where the wires crossed they made a short circuit, producing light, indicating that the wires had not been properly wrapped, such being his impression of facts under his immediate observation and within his experience.

**3. Appeal and Error—Evidence—Harmless Error.**

The trial judge cures evidence erroneously admitted by striking it out, so informing the jury and instructing them not to consider it.

**4. Evidence—Expert—Electricity—Issues—Appeal and Error—Harmless Error.**

Where the defendant's liability for the killing of the plaintiff's intestate is made to depend upon its negligence in permitting an improperly insulated wire, admittedly charged with a deadly current of electricity, to

come in contact with an otherwise harmless wire, thus producing the death, a question asked an expert, and affirmatively answered, "whether the conditions arising on the facts stated, if so found by the jury, would naturally and inevitably lead to intestate's death," while not approved, is not held for reversible error, there being no question of the deadliness of the current, and not objectionable as involving the very fact the jury were to pass upon.

## 5. Negligence—Electricity—Primary Liability—Secondary Liability.

Where the evidence tends only to show that the plaintiff's intestate was killed by a harmless service wire furnished to his employer by an electric power company becoming suddenly charged by a deadly current of electricity from the primary wire of the power company, and that the intestate's employer had only contracted for the use of a wire not dangerous to human life, as between the power company and the employer of the intestate, the question of primary and secondary liability does not arise in an action against them both.

## 6. Actions—Nonsuit—Torts—Joint Tort Feasors—Appeal and Error.

An action against joint tort feasors may be maintained against either, or both, at the election of the party injured, and a nonsuit as to one of them is not error as to the other.

ACTION tried before *Bond, J.,* and a jury, at February Term, 1918, of PASQUOTANK.

The action was to recover damages for alleged negligent killing of plaintiff's intestate, and there was evidence tending to show that, in November, 1916, intestate, a vigorous young man, was working as an employee in the drug store of Pendleton & Perry; that there was used in this store, for the purpose of mixing milk shakes and other drinks, an appliance operated by electricity supplied by the Light and Power Company over a service wire running into said store, and, under a contract that said power be furnished of 110 volts, shown to be harmless to the operator; that on the occasion in question, as intestate, in the course of his employment, put up his hand to turn on the power for the purpose of preparing a malted milk to drink, he received a severe electric shock, killing him almost immediately, the attendant circumstances tending to show that the service wire had been unexpectedly charged with a tremendous current of electricity. There was further evidence to show that this overcharge was caused by the breaking of the power or primary wire of the defendant, the Electric Light and Power Company, carrying a current of 2200 or 2300 volts, and its coming in contact with the service wire running into the store of the defendants Pendleton & Perry, and that both wires were improperly and insufficiently protected, etc.

At the close of the entire testimony, on motion, a nonsuit was ordered as to the individual defendants, Pendleton & Perry, and, on denial of liability and plea of contributory negligence, with supporting evidence tending to negative negligence on the part of the remaining defendant,

the Light and Power Company, the cause was submitted to the jury on appropriate issues. Verdict for plaintiff. Judgment on the verdict, and defendant excepted and appealed, assigning errors.

*J. C. Brooks, J. B. Leigh, Ward & Grimes, and C. E. Thompson for plaintiff.*

*L. T. Seawell, W. A. Worth, and Aydlett, Simpson & Sawyer for Power Company.*

*Ehringhaus & Small and Meekins & McMullan for defendants Pendleton & Perry.*

PER CURIAM. There was ample evidence of negligence on the part of defendant, the Light and Power Company, both as to insufficient insulation of its wires, their improper placing on the poles, the primary wire being too near the service wires, and also in the failure of the defendant company and its employees to shut off the current in time after the primary wire had broken, and defendant knew it, or had fair opportunity to know it, and of the dangers that imminently threatened by reason of the conditions presented. There was some opposing testimony from defendants tending to negative negligence on its part, but, under a full and fair charge, the jury having accepted plaintiff's version of the occurrence, his right to recover is clearly established, and we find no reason for disturbing the result.

On the argument, it was earnestly urged for error that a witness who had testified to the unusual conditions he discovered at the place where the primary wire had broken, "That he had noticed overhead where two wires had crossed, forming a short circuit, and that every few minutes it would light up the whole place," and that he heard snapping and popping of electric wires overhead, etc., was asked, "What did the disturbance indicate?" and was allowed to answer, over defendant's objection, "It looked as if it was coming from the wires not being properly wrapped." The testimony giving the impression of the witness as to facts under his immediate observation and well within his experience, there would seem to be no valid objection to the evidence. *Jones v. R. R.,* at the present term, citing *Britt v. R. R.,* 144 N. C., 242; *Tire Setter Co. v. Whitehurst,* 148 N. C., 446. The question and answer were later withdrawn by leave of court, his Honor telling the jury that both were stricken out and would not be considered by them. If, therefore, error was presented here, we are of opinion that, on the facts of this record, the same was cured. Again, it was insisted that error was committed in certain questions and answers appearing in the evidence of the witness, H. P. Charles, an expert electrician, examined in behalf of plaintiff. Without setting out the questions in full, which are very elaborate, they

are well within the domain of expert evidence, embody every fact essential and relevant to the occurrence spoken to by the witness as to the cause of intestate's death, and are put on the supposition that the jury shall find these facts to be true, and we find no reversible error, either in the questions or answers. The words appearing in one of these questions, "whether the conditions arising on the facts stated would naturally and inevitably lead to intestate's death," are not in form to be approved, but there was no serious contention that if the primary wire, carrying 2300 volts, came in contact with the service wire running into the drug store, that it would produce death. The expert witness for defendant, in effect, testified to the same thing, and, on the record, we think the rather insistent words objected to may not be held for reversible error. It is not unlike the case presented in *Lynch v. Mfg. Co.,* 167 N. C., pp. 98-101, where, in the question to the expert as to the cause of death, the word used was the proximate cause of the death. The term, while disapproved, was held to have worked no harm to appellant, the facts showing that, if the cause, it was undoubtedly the proximate cause. Nor is the question objectionable as embodying the very fact the jury were to pass upon. The question directly at issue was not whether the contact between the service wire and primary wire, carrying 2300 volts, would produce death—about this, as stated, there was no serious dispute—but whether, in the case presented, this contact had been caused by defendant's negligence.

It was further contended that the court committed error, to defendant's prejudice, in ordering a nonsuit as to individual defendants, Pendleton & Perry. We are inclined to concur in the judgment of his Honor as to these defendants; but in no event, on the facts presented, could this order of nonsuit be held for reversible error. It is the settled rule in cases of this character that "where the wrongful acts of two or more persons concur in producing a single injury, and with or without concert between them, they may be treated as joint tort feasors and, as a rule, sued separately or together, at the election of plaintiffs" (*Hipp. v. Ferral,* 169 N. C., 551-554, citing *Hough v. R. R.,* 144 N. C., 692; 38 Cyc., pp. 488, *et seq.*); and while we have held that, at the instance of a defendant, the other wrong-doers may be made parties, this is only in cases where, on the facts presented, there is a question of primary and secondary liability between them; but, in this case, the defendant's liability having been established on the ground that it negligently allowed its primary wire, carrying 2300 volts of electricity, to come in contact with its service wire, running into the drug store, which they were under contract to supply with 110 volts, no such position could be for a moment maintained by it, and the nonsuit of its codefendant has therefore

worked them no injury. *Gregg v. Wilmington,* 155 N. C., 18. The other exceptions are without merit, and, on the record, the judgment for plaintiff must be affirmed.

No error.