PAULINE C. HANSEL, Employee-Plaintiff v. SHERMAN TEXTILES, Employer; TRAVELERS INSURANCE COMPANY, Carrier-Defendants

No. 8010IC207

(Filed 7 October 1980)

**Master and Servant § 68– worker's compensation – byssinosis caused by employment – insufficient evidence**

The evidence was insufficient to support a determination by the Industrial Commission that plaintiff contracted byssinosis as a result of her exposure to cotton dust in her employment as a weaver with defendant where plaintiff's medical expert testified that he was unable to make a definitive diagnosis of byssinosis because he had no information about the extent of plaintiff's exposure to cotton dust and because plaintiff suffered from asthma and chronic bronchitis, and where there was no finding with respect to the amount of cotton dust ordinarily present in the area where plaintiff worked.

Judge Wells dissenting.

Appeal by defendants from Opinion and Award of the North Carolina Industrial Commission filed 17 December 1979. Heard in the Court of Appeals 28 August 1980.

Plaintiff seeks recovery on the grounds that she contracted byssinosis as a result of exposure to cotton dust in the course of her employment as a textile worker in defendant's plant. At the hearing before the deputy commissioner, the plaintiff's evidence consisted of her own testimony, the testimony of Dr. T. Reginald Harris, a pulmonary specialist who had examined plaintiff, and a medical report made by Dr. Harris following his examination of plaintiff.

Hansel v. Sherman Textiles

Plaintiff is 51 years old and has worked some 31 years in various textile plants in the Gastonia-Bessemer City area. Most of her work assignments have been in the weave room[1] area of the plants in which she has been employed. Plaintiff has a history of respiratory problems which dates from her early childhood. At the age of nine years, she suffered from an inability to breathe properly through her nose while lying in a prone position. When she first started to work in the textile mills, she complained of a dry, hacking cough which bothered her both at home and at work, but was more severe while at work. In 1948, plaintiff was advised by her doctor that she had chronic bronchitis. In 1964 and again in 1974, plaintiff had surgery performed on her vocal cords. Plaintiff began her employment with defendant in 1967. About 1970, plaintiff was advised by a doctor that she had asthma and that she had been suffering from the condition for some period of time theretofore. Plaintiff has smoked cigarettes since age 16 and for the last 25 years, has averaged a pack a day. Sometime during 1971, plaintiff developed a mucous producing cough which was accompanied by tightness in the chest and swelling of the throat. These symptoms became more severe when the plaintiff returned to work at the plant following a weekend or vacation absence. On eight different occasions, these symptoms culminated in blackout spells. In 1975, plaintiff learned that she had emphysema and signs of byssinosis. In 1977, she was hospitalized for three weeks in Black Mountain and was told that she suffered from chronic obstructive lung disease. Plaintiff was advised that she could continue to work only if she did so in a dust-free environment. Upon her return to work, plaintiff was reassigned to the cloth-inspection room of defendant's plant. Her symptoms did not abate, however, and she terminated her employment on 5 May 1977.

On 10 August 1978, plaintiff was examined by Dr. Harris who testified as a medical expert. Dr. Harris noted that there exist three distinct syndromes which probably contribute to the plaintiff's current impairment. These he identified as asthma,

---

[1]The weave room is that area of a textile plant where the processed yarn is woven into fabric. Before the material reaches this phase of processing, it has been treated with water and a special sizing formula to cut down on flying lint and to make it easier to handle during the weaving process. The weave room is the final phase of processing performed at defendant's textile plant.

chronic bronchitis, and possibly byssinosis. He went on to state, however, that he was unable to make a definitive diagnosis of byssinosis in this case. Here, he noted two distinct reasons as the source of his difficulty.

First, the preexisting chronic bronchitis and asthmatic conditions make a byssinosis diagnosis more difficult because of the tendency of the three syndromes to manifest identical symptoms. In this regard, Dr. Harris noted his inability "to separate out any specific symptoms related to byssinosis that this lady has that cannot be explained by the other two conditions that are present."

The second factor which makes a conclusive diagnosis more difficult is the absence of sufficiently specific information about the density of cotton dust in plaintiff's work environment. Dr. Harris testified that ordinarily the weave room in a textile plant is an area of minimal cotton-dust exposure, and that he had no information as to what plaintiff's history of cotton-dust exposure had been. He noted further that such information "is one factor that would tend to add weight or less weight to consider the diagnosis" and that the less the amount of cotton dust in plaintiff's work environment, the greater the improbability that plaintiff's current impairment is a result of byssinosis.

Defendant's evidence consisted of the testimony of William Michael Jackson, the plant manager at the facility where plaintiff worked. He testified, in pertinent part, that most of the material handled by Sherman Textiles is sixty percent cotton and forty percent rayon, that the weave room where plaintiff worked was ventilated by seven, five-foot by five-foot fans, and that while the operations conducted in the weave room are productive of some dust, the amount of dust produced is very small, particularly in comparison to other plant operations.

Deputy Commissioner Denson concluded that plaintiff had contracted byssinosis as a result of her exposure to cotton dust in her employment with defendant and that plaintiff was due compensation for permanent partial disability. On appeal, the full Commission, with one member dissenting, affirmed and adopted the Opinion and Award of the deputy commissioner. From the adverse ruling of the full Commission, defendant appealed.

*Frederick R. Stann, for plaintiff appellee.*

*Hollowell, Stott & Hollowell, by Grady B. Stott, for defendant appellants.*

ERWIN, Judge.

Defendants raise assignments of error to the findings of fact by the full Commission. For the reasons which follow, we conclude that the Commission's findings are not supported by sufficient competent evidence to support the award and, therefore, vacate the award of the full Commission.

For purposes of our review, the pertinent facts as found by the deputy commissioner and adopted by the Commission follow:

"FINDINGS OF FACT

\* \* \*

In 1967 plaintiff began working for defendant-employer as a weaver. Except for a six month's absence in 1971, plaintiff worked continuously until May 5, 1977. The air was very dusty from the cotton that was processed.

Plaintiff in about 1972, began to notice that when she began the work week on Sunday night, she would have chest tightness and some coughing after being there two or three hours. In about 1974 or 1975, plaintiff felt that way all the time at work with no particular time being worse.

EXCEPTION NO. 1

3. Because of shortness of breath and other respiratory problems and some blackout spells, plaintiff moved to the cloth room during the last six months of her employment by defendant. This took her out of dust but her respiratory problems had reached the irreversible stage, and she could hardly exert herself. She quit on May 5, 1977 because of respiratory problems.

EXCEPTION NO. 2

4. Plaintiff has both asthma and byssinosis which are causing her respiratory impairment. Her impairment is severe and irreversible.

Hansel v. Sherman Textiles

EXCEPTION NO. 3

5. Plaintiff has byssinosis as a result of her exposure to cotton dust in her employment with defendant-employer and this is partly responsible for her disability.

EXCEPTION NO. 4

6. Plaintiff has not worked since May 5, 1977."

On the basis of the foregoing findings of fact, the deputy commissioner made the following conclusions of law which were adopted by the Commission:

"1. Plaintiff has contracted the disease byssinosis as a result of exposure to cotton dust in her employment with defendant-employer. This disease is compensable under the provisions of G.S. 97-53 (13).

EXCEPTION NO. 5

2. Defendants owe plaintiff compensation for permanent, partial disability from May 5, 1977 for her period of disability not to exceed 300 weeks. G.S. 97-30.

EXCEPTION NO. 6."

It is well settled in this jurisdiction that the findings of fact of the Industrial Commission are conclusive on appeal when they are supported by any competent evidence, even though there is evidence that would support a contrary finding. *Willis v. Drapery Plant*, 29 N.C. App. 386, 224 S.E. 2d 287 (1976); *Russell v. Yarns, Inc.*, 18 N.C. App. 249, 196 S.E. 2d 571 (1973); 8 Strong's N.C. Index 3d, Master and Servant, § 96. Therefore, while a review in this Court of actions taken by the full Commission does not contemplate a retrial of the facts of the case here, we do have the duty of reviewing questions of law and of legal inference as decided by the full Commission. For this purpose, questions of law include: "(1) Whether or not there was any competent evidence before the Commission to support its findings of fact; and (2) whether or not the findings of fact of the Commission justify its legal conclusions and decision." *Inscoe v. Industries, Inc.*, 292 N.C. 211, 216, 232 S.E. 2d 449, 452 (1977).

As noted above, the deputy commissioner concluded, *inter alia*, the "[p]laintiff has contracted the disease byssinosis as a result of exposure to cotton dust in her employment with defend-

ant-employer" and that "[t]his disease is compensable under the provisions of G.S. 97-53 (13)." The statutory scheme for occupational diseases set forth in G.S. 97-53 provides in part as follows:

"§ 97-53. *Occupational diseases enumerated; when due to exposure to chemicals.* — The following diseases and conditions only shall be deemed to be occupational diseases within the meaning of this Article:

\* \* \*

(13) Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

The clear import of this language is that in order for an illness to be compensable under the Act, it must be fairly traced to the employment as a contributing proximate cause. That there must be established a causal relation between the disabling condition and the performance of some duty of the employment is well settled in the law of this State. In *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979), our Supreme Court expressly held that proof of a causal connection between the disease and the employee's occupation is an essential element in proving the existence of a compensable "occupational disease" within the meaning of G.S. 97-53. There, the Court noted that in addition to the statutory limitations that the disease be "characteristic" of a trade or occupation and that it not be an ordinary disease of life to which the general public is equally exposed outside of the employment, "[t]he final requirement in establishing a compensable claim under subsection (13) is proof of causation. It is this limitation which protects our Workmen's Compensation Act from being converted into a general health and insurance benefit act." 297 N.C. at 475, 256 S.E. 2d at 200. As a guide in determining what evidence would suffice for purposes of proving causation, the Court went on to state as follows:

"Among the circumstances which may be considered are the following: (1) *the extent of exposure to the disease or disease-causing agents during employment,* (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history." (Emphasis added.)

297 N.C. at 476, 256 S.E. 2d at 200.

It is apparent upon review of the evidence in the case *sub judice* that the Commission's conclusion that plaintiff had contracted byssinosis during her employment with defendant is based in large part upon the expert medical testimony of Dr. Harris. We are of the view that such evidence, when considered in connection with the other evidence adduced at the hearing, fails to establish the requisite causal relation between plaintiff's disability and her employment and does not support the Commission's findings.

A diagnosis of byssinosis represents a medical conclusion that one's respiratory problems stem from prolonged exposure to high levels of cotton dust. For purposes of our review, the testimony of Dr. Harris is particularly noteworthy because of the conspicuous absence of any such conclusion. Indeed, the doctor admitted that he was unable to repose much confidence in a diagnosis of byssinosis in Mrs. Hansel's case, because he had no information about the extent of her exposure to cotton dust and because of the presence of the asthma and chronic bronchitis conditions, which could account for the symptoms which plaintiff experienced. In response to a hypothetical question propounded by plaintiff as to whether her condition could or might be byssinosis, Dr. Harris gave the following response:

> "Cotton, you said. If she did not work in cotton, I would not have any diagnosis of byssinosis. In her particular case, I don't really have any reliable information as to what the particular fiber was and the extent of exposure to various fibers and exposure, and to what was in the weave room. It is more difficult to answer that question."

When plaintiff repeated her hypothetical question asking the witness to assume the additional fact that plaintiff had been exposed to a significant amount of cotton dust, the witness responded, "There is a possibility that she has byssinosis and

she certainly could have." Dr. Harris went on to explain, however:

> "I have difficulty in this patient for several reasons, to answer so specific a question. One of the difficulties, I'm not really aware of how much cotton dust exposure this lady was involved. Your hypothetical question assumed considerable amounts of cotton dust exposure ... If there was a lot of other fibers in the cotton in that department, there would be less exposure."

On cross-examination, Dr. Harris noted: "Because asthmatics react to all manners of dust. I said the symptoms of coughing, tightness of the chest could result or could be caused by the asthmatic condition rather than the breathing of dust." The above excerpts are representative of the tenor of the entire testimony offered by Dr. Harris.

Our review of the record reveals that the absence of specific findings with respect to the amount of cotton dust ordinarily present in the area where plaintiff worked leads us to conclude that the Commission's finding that the plaintiff contracted byssinosis as a result of her exposure to cotton dust in her employment with defendant is unsupported by sufficient competent evidence.

The award of the full Commission is

Vacated.

Judge HEDRICK concurs.

Judge WELLS dissents.

Judge WELLS dissenting:

I must respectfully dissent from the majority opinion because I believe there was sufficient competent evidence to support the findings of fact made by the Commission. I will briefly discuss the essential findings of fact and the evidence which I believe supports those findings.

The Commission found: "2. ... In 1967 plaintiff began working for defendant-employer as a weaver. Except for six months absence in 1971, plaintiff worked continuously until May 5, 1977. The air was very dusty from the cotton that was processed ...."

Hansel v. Sherman Textiles

To support this finding, we note the following portions of the evidence. Plaintiff testified in pertinent part as follows:

I have been weaving for Sherman Textiles. They run cotton, rayon, polyester, acetate. The mill was dusty. They did not have a dust cleaning system. There was a good bit of dust, mostly small and fine dust, with hairlike particles in it . . . .

. . . . 

. . . The weavers had to clean and recap, and Sherman, when I first went to work there, they had us clean the harness and recap every Friday night. At the time I was cleaning up, you took a piece of old cloth and wiped the cotton off. It was from ½ to 2 inches thick on the loom and you wiped it off and fanned it out and went to the next one. You could see the dust in the air . . . . If someone behind you were cleaning the loom and you fanned your cloth and they fanned theirs, there was a lot of cotton dust flying around. You could see across the room, but it was dusty.

In addition to plaintiff's testimony, there was evidence for defendant Sherman Textiles which tends to explain and clarify plaintiff's testimony in support of the foregoing finding of fact. William Michael Jackson, Sherman's plant manager, testified in pertinent part as follows:

I don't think the weave room where Mrs. Hansel worked is as dusty as it has been described. We have 6 or 7 big exhaust fans, 5 feet by 5 feet. They exhaust the air and the humidity adds mist; it has water in it and sprays in the room over all the machines to help keep down the dust . . . .

The filler material is rayon, 100% rayon. The other material is 60% cotton. If we have 60% cotton, I suppose there is some cotton dust in Sherman Textiles, and the process itself gives off dust . . . .

In the type operation in the weave room at Sherman Textiles, there is always some lint, but not any compared to other textile operations . . . .

The Commission further found: "4. Plaintiff has both asthma and byssinosis which are causing her respiratory impairment . . . . 5. Plaintiff has byssinosis as a result of her

Hansel v. Sherman Textiles

exposure to cotton dust in her employment with defendant-employer and this is partly responsible for her disability."

In support of the foregoing findings of fact, plaintiff testified generally as to her breathing problems and that she left her employment at Sherman Textiles because of her breathing problems. She did not have the problem before she went to work at Sherman Textiles.

In further support of the foregoing finding, Dr. Harris, plaintiff's medical witness offered, in pertinent part, testimony as follows:

> She has an illness. In general terms, I thought it fitted the pattern of chronic obstructive lung disease or airway disease . . . . She has three distinct syndromes that probably contributes to that impairment. These are asthma, byssinosis and chronic bronchitis . . . .
>
> . . . She should not be in an environment where there is dust. If her job requires exposure to dust, she shouldn't do it . . . .
>
> .   .   .   .
>
> . . . There is a possibility that she has byssinosis and she certainly could have . . . .
>
> .   .   .   .
>
> . . . People who have byssinosis for many years, have a lung disease that is indistinguishable from chronic bronchitis.

Additionally, we find the following sequence of questions and answers in the testimony of Dr. Harris:

> A. If I can answer more than a yes or no. As best I can understand the question. There is a possibility that she has byssinosis and she certainly could have. I'd like to clarify a little in this particular situation.
>
> Q. Could I interrupt you just a minute. Can you answer as to could or might?
>
> .   .   .   .
>
> A. The answer is yes, could or might.

Q. I'd like for you to assume the same facts, Doctor. Do you have an opinion satisfactory to yourself to a reasonable degree of medical certainty that the condition suffered by Pauline Hansel could or might by byssinosis?

. . . .

A. I can answer that. Yes.

Q. Yes, you have an opinion?

A. Yes.

. . . .

A. My answer is yes, it could or might be byssinosis.

In addition to Dr. Harris' testimony, his written medical report was introduced into evidence and is a part of the record. That report, in the section entitled *Comment,* contains the following pertinent statements:

On the basis of the information available to me, this patient may well have three identifiable problems causing lung disease. She has a history compatible with and suggesting asthma. She is believed to have chronic bronchitis and to have byssinosis. The later [*sic*] diagnosis is made on the basis of chronic obstructive lung disease in a patient with a typical work history of byssinosis and presumably has had exposure to cotton textile dust over a long enough time to permit development of this syndrome . . . . It is not possible to quantitate the relative contribution of the various etiological factors in her present respiratory impairment. It is likely that all are involved to some extent. It is this examiners [*sic*] belief that the patient probably has asthma and that she does have chronic bronchitis as well as byssinosis.

Dr. Harris' medical report also contained the following entry:

Diagnostic Conclusion:

1) Chronic obstruction [*sic*] air ways disease.
   Asthma, probable.
   Byssinosis syndrome.
   Chronic bronchitis.

The portions of Dr. Harris' testimony and medical report cited or quoted in this dissent are those which appear to be most favorable to plaintiff. It is clear, however, that Dr. Harris gave testimony, as pointed out by the majority, that he could not pinpoint the precise or exact cause of plaintiff's illness; or to characterize his testimony further, it was to the effect that while plaintiff's exposure to cotton dust could have contributed to her illness, he could not eliminate other possible contributing causes. Thus, we come to the basic question of whether an award may be affirmed where the medical testimony supports the probability of compensable disease but does not rule out other possible causes not related to any exposure associated with the employment. *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979) seems to answer that question in the affirmative. In *Booker*, the hypothetical questions as to causation put to the expert witness included a "could or might have" type of hypothesis and the responses of the medical witnesses were to that effect: possible, or probable, but not conclusive. Chief Justice Sharp, writing for a unanimous Court, stated: "In our opinion the hearing commissioner committed no error in allowing the expert witnesses to answer the causation questions with the degree of certainty the witness felt appropriate [citations omitted]." *Id.* at 480, 256 S.E. 2d at 203.

*Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E. 2d 541 (1964) also supports our position. In *Lockwood*, Justice Moore discussed at length the quality of expert opinion testimony necessary to make out a *prima facie* case for resolution by the jury on the question of causation. We quote in pertinent part:

> With respect to hypothetical questions propounded to expert witnesses, the rule in North Carolina is that "If the opinion asked for is one relating to cause and effect, the witness should be asked whether in his opinion a particular event or condition *could* or *might* have produced the result in question, not whether it did produce such result." Stansbury: North Carolina Evidence (2d Ed.), § 137, p. 332. (Emphasis ours.)

> The "could" or "might" as used by Stansbury refers to probability and not mere possibility. It is contemplated that the answer of the expert will be based on scientific knowledge and professional experience. *Moore v. Accident*

*Assurance Corporation,* 173 N.C. 532, 92 S.E. 362; *Raulf v. Light Co.,* 176 N.C. 691, 97 S.E. 236. The expert witness draws no inferences from the testimony; he merely expresses his professional opinion upon an assumed finding of facts by the jury. *Godfrey v. Power Co.,* 190 N.C. 24, 128 S.E. 485. The expert may testify as to the causes capable of producing the result and whether or not the particular hypothesis was a capable cause. *Patrick v. Treadwell,* 222 N.C. 1, 21 S.E. 2d 818. A medical expert may base his opinion in part upon statements made to him by the patient in the course of professional examination and treatment and in part on the hypothetical facts. *Penland v. Coal Co.,* 246 N.C. 26, 97 S.E. 2d 432. The opinion is based on the reasonable probabilities known to the expert from scientific learning and experience. A result in a particular case may stem from a number of causes. The expert may express the opinion that a particular cause "could" or "might" have produced the result — indicating that the result is capable of proceeding from the particular cause as a scientific fact, *i.e.,* reasonable probability in the particular scientific field. If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken. The trial judge is not, of course, required to make subtle and refined distinctions and he has discretion in passing on the admissibility of expert testimony, and if in the exercise of his discretion it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation, is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony *per se* does not show that the causal relation is merely speculative and mere possibility, the admission of the testimony will not be held erroneous.

*Id.* at 668-69, 138 S.E. 2d at 545-46. *See also, Lee v. Regan,* 47 N.C. App. 544, 267 S.E. 2d 909 (1980). Thus, it appears that while Dr. Harris' testimony and medical report contains contradiction and uncertainties and points out the possibility of other con-

tributing causes, when the evidence shows that it is probable that plaintiff has byssinosis, viewed in the light of the clear evidence of her exposure to cotton dust in her employment, the Commission was clearly justified in making its disputed findings of fact. The resolution of contradictions in the evidence is the function of the Commission, not ours. *Moore v. Stevens & Co.*, 47 N.C. App. 744, 269 S.E. 2d 159 (1980).

In my opinion, the order of the Commission must be affirmed.