The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties on May 7, 1991.
2. Kemper Insurance/Lumbermen's Mutual Casualty Company was the carrier on the risk.
3. The plaintiff was paid full salary continuation by defendant for the periods from July 29, 1991 through July 31, 1991 and August 1, 2, and 5, 1991, for a total of six days. Plaintiff's salary continuation was paid at the rate of $8.04 per hour for a total of $385.92.
4. The plaintiff returned to work for defendant on August 6, 1991, and continued to work for employer through the date of the initial hearing at the same or greater average weekly wage as she earned on the date of the injury.
5. The plaintiff sustained a compensable occupational disease, namely DeQuervain's tendinitis of the right wrist on or about May 7, 1991.
6. The plaintiff's average weekly wage was $321.60, which yields a weekly compensation rate of $214.41.
7. The issues for determination are:
 a. Whether the plaintiff is entitled to any further compensation as a result of the compensable right DeQuervain's tendinitis.
 b. Whether the plaintiff is entitled to compensation for problems with her left arm or wrist;
 c. Whether defendants are entitled to a credit for sums paid as salary continuation; and
 d. Whether defendants should be required to pay for medical treatment not authorized by defendants.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a thirty-nine year old high school graduate who had attended community college. She began working for defendant-employer in November of 1977, where she worked for approximately twelve and one-half years in the chocolate department. The plaintiff then became a packer in the saltine department in 1989.
2. Plaintiff's duties in the saltine department included packing saltine crackers and sesame crackers, and feeding these crackers into a machine for packaging, two to a pack. The plaintiff worked an eight-hour shift, during which she was permitted two ten-minute breaks and one twenty-five minute lunch.
3. The feeding job required plaintiff to stack crackers into eighteen-inch stacks and feed eight to ten stacks per minute into the machine.
4. The packing job required plaintiff to pick up twenty-five packages of crackers and place them into a box, at a time. A box of saltines holds twelve rows of crackers, or 300 packages into the box. The plaintiff made approximately twelve repetitions per minute to fill the box. As the sesame crackers were slightly larger, a box holds 200 packages, in eight rows of twenty-five, taking eight repetitions per minute.
5. On or about May 7, 1991, the plaintiff experienced pain in her right hand, which she reported to the plant nurse, who treated her wrist with hot compresses and over-the-counter pain relievers.
6. On May 31, 1991, the defendant-employer referred plaintiff to Dr. Stephen Naso, a hand surgeon. At that time, plaintiff complained of left and right wrist pain which had existed for approximately three weeks. Dr. Naso diagnosed plaintiff with DeQuervain's tendinitis in the right wrist and tendinitis in the left wrist. A course of conservative treatment was initially followed. However, after this treatment did not offer improvement, surgery was performed on the right wrist to decompress the DeQuervain's tendinitis, exterior brevus and abduction longus on July 29, 1991.
7. The plaintiff was out of work from July 29, 1991 until she returned to light duty work on August 6, 1991. The plaintiff's light duty work permitted her to work at her own pace. Her light work jobs involved (1) opening "scrap" packages of snacks with a blade and discarding the contents; (2) picking bad peanuts, shells and hulls from the line; and (3) picking out chips that cannot be packaged.
8. Dr. Naso continued to see the plaintiff, maintaining her on light duty status until November 5, 1991, at which time she was returned to regular duty work. The plaintiff voiced no complaints at that time, and Dr. Naso rated her as having no permanent partial impairment to the right wrist.
9. On November 12, 1991, the plaintiff went to see Dr. Robert McBride without authorization from defendant-employer. Dr. McBride is an orthopaedic surgeon who sees approximately fifteen to twenty percent hand/wrist patients in his practice. The plaintiff complained of pain in both wrists, and pain at the base of her right thumb. Dr. McBride diagnosed plaintiff with probable carpal tunnel syndrome in the left wrist and DeQuervain's tendinitis in the right wrist. He prescribed Feldene, physical therapy, and Vitamin B-6.
10. On November 19, 1991, the plaintiff returned to Dr. Naso. Although Dr. Naso was of the opinion that plaintiff's examination was negative for left wrist carpal tunnel syndrome, he, nevertheless, ordered nerve studies due to Dr. McBride's findings.
11. On December 31, 1991, the plaintiff returned for a follow-up visit with Dr. Naso, at which time she was advised that her examination was essentially normal. At that time, Dr. Naso rated plaintiff as having five percent permanent partial impairment as a result of her complaints of pain in the right wrist.
12. The plaintiff returned to Dr. McBride in January 1992 without obtaining authorization from the defendant-employer. Dr. McBride ordered nerve studies, which showed no electrical evidence of radiculopathy or entrapment. Despite the test results, Dr. McBride continued to suspect probable bilateral carpal tunnel syndrome. Dr. McBride recommended surgery which was not performed.
13. Between January 23, 1992 and June 11, 1992, the plaintiff returned to Dr. McBride at which time she complained of problems in her left shoulder. Following an examination, Dr. McBride was of the opinion that plaintiff had an impingement problem in her left shoulder and a possible C7 radiculopathy. Plaintiff was given a cortisone injection in the shoulder and placed on oral cortisone. Plaintiff was referred for therapy and excused from work from June 13 through July 6, 1992.
14. From June 13 through July 6, 1992, the plaintiff received short-term disability benefits in an amount equal to approximately ninety-five percent of her regular salary through an employer-funded program. In addition, medical bills for Dr. McBride were covered on plaintiff's health insurance plan.
15. The defendants have paid for medical care provided by Dr. Naso, which was authorized by defendants.
16. On August 11, 1992, Dr. McBride released the plaintiff and rated her as having a ten percent permanent partial impairment of each hand.
17. The salary continuation program through which plaintiff received benefits in 1991 was employer funded.
18. The plaintiff was last seen by Dr. McBride on February 19, 1993, at which time a physical examination demonstrated a negative Tinel's sign.
19. The greater weight of competent and convincing medical evidence in the record supports a finding that the care provided by Dr. McBride did not provide relief, effect a cure, or lessen the period of disability.
20. The plaintiff did not request authorization from either the defendant-employer, carrier, or the Industrial Commission prior to or within a reasonable time from the time she self-referred to Dr. McBride.
21. The greater weight of the convincing medical evidence supports a finding that the plaintiff did not have carpal tunnel syndrome.
22. There is no competent or convincing medical evidence in the record to support a finding that the C7 radiculopathy in plaintiff's left shoulder was causally related to her job at defendant-employer.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proof to establish by competent medical evidence of the existence of a compensable occupational disease within the meaning of N.C. GEN. STAT. §97-53 (13). Hansel v. Sherman Textiles, 49 N.C. App. 1,270 S.E.2d 585 (1980) rev'd on other grounds, 304 N.C. 44,283 S.E.2d 101 (1981). In the instant case, the plaintiff has failed to sufficiently or convincingly carry the burden of proof to establish that she had contracted carpal tunnel syndrome or that her C7 radiculopathy was causally related to her employment.
2. With respect to the admittedly compensable claim of DeQuervain's tendinitis of the right wrist, the plaintiff is entitled to ten weeks of permanent partial disability compensation as a result of the five percent rating to her wrist. N.C. GEN. STAT. § 97-31 (12).
3. The claimant must obtain Industrial Commission approval for a physician selected by a claimant, within a reasonable time after procuring the services. There must also be a finding based upon competent and convincing evidence that the treatment was required to effect a cure or give relief or lessen the period of disability. Schofield v. Great Atlantic Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980). In this case, the plaintiff did not make a timely request for approval of her change of physician to Dr. McBride. Furthermore, there is no convincing showing that Dr. McBride's treatment tended to effect a cure, provide relief, or lessen the period of disability for any condition causally related to plaintiff's employment. Therefore, plaintiff is not entitled to have defendants provide compensation for medical expenses she incurred as a result of the care by Dr. McBride.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Subject to an attorney's fee, defendants shall pay ten weeks of permanent partial disability compensation at the rate of $214.41 per week as a result of the rating by Dr. Naso to the right wrist.
2. Plaintiff's claim for benefits for her left arm and wrist is, and under the law must be, DENIED.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraph 1 is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
* * * * * * * * * * *
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1996.
 S/ _____________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ _____________________________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm 06/17/96