The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. Defendant was a duly qualified self-insured with Gallagher Bassett Services as the servicing agent at all times relevant herein.
4. The parties stipulated that plaintiff was out of work from September 20, 1997 through August 2, 1998 and that plaintiff was paid disability compensation through a company funded plan for a period beginning October 8, 1997 through August 2, 1998, totaling 42 weeks with payments totaling $13,027.85.
5. The deposition of Kenneth J. Dols, M.D. is a part of the evidentiary record in this matter.
6. The issues presented are:
 a) Whether plaintiff's shoulder condition is causally related to his employment with defendant-employer as an occupational disease pursuant to N.C. GEN. STAT. § 97-53(13)?
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 44 years old and had completed the 11th grade. Plaintiff became employed with defendant-employer in about 1981 as a mill man and in 1984 he became a tire builder and has continued to be so employed.
2. Plaintiff worked on a single-stage tire-building machine. Plaintiff's job required placing various rubber components onto a mechanical apparatus, which then formed the tire. While performing this job, the plaintiff used many different arm and hand motions to place these materials correctly on the tire drum. The drum was located between lower mid-chest level and waist level. Some of the rubber components were fed onto the drum by a conveyor, which was located directly in front of the drum. Plaintiff placed these materials on the drum by reaching forward. This motion did not require that plaintiff raise his arm to a height greater than 90 degrees.
3. As part of his duties, plaintiff also used a hot knife and scissors, which were located to the side of the drum. These items were located on a shelf, which was approximately shoulder level height. Despite this fact, plaintiff could reach these tools without raising his arms more than 90 degrees.
4. Furthermore, to perform his job, plaintiff would have to reach behind him to obtain the beads for the tires. This motion could require plaintiff to reach at shoulder level. However, the bead material weighed no more than a pound or two, and plaintiff was not required to perform this motion continuously or repetitiously.
5. When all of the rubber components were combined together on the right side of the machine, plaintiff would move to the left side of the machine, where he would undertake similar movements to assemble other pieces of rubber, which comprised a different part of the tire. Again, plaintiff used tools such as scissors and a hot knife, which were located on a shelf to his left. The shelf was approximately shoulder height but, once again, plaintiff did not have to reach overhead with his arm in order to grasp those tools. While working on the left side of the machine, plaintiff would occasionally need to reach overhead to press a button to operate a conveyor. However, when plaintiff performed this motion, he was lifting no weight. Furthermore, this task was only performed four to five times in any given shift.
6. All of the materials plaintiff handled when assembling the components of a tire only weighed several pounds apiece. Completed tires weighed approximately 15 to 20 pounds. Once the tires were completed, plaintiff would remove them from the drum and place them on a cart called a "book." The "book" contained five levels. The fourth level was located at approximately shoulder level and the fifth level was at approximately head level. Plaintiff would have to reach up to place tires on these levels, but he did not have to do so continuously or repetitiously.
7. Although plaintiff experienced pain in his right shoulder prior to September 24, 1997, he did not report his right shoulder condition to defendant-employer until on or about September 24, 1997.
8. Plaintiff initially sought treatment from his family physician, Dr. McPherson. Dr. McPherson referred plaintiff to Dr. Kenneth Dols, orthopedist. Plaintiff reported a very brief, incomplete and non-specific description of his job duties to Dr. Dols. Dr. Dols never reviewed plaintiff's written job description and he never witnessed any person performing the tire building duties. Dr. Dols did not know the amount of force plaintiff used when performing his job nor was Dr. Dols aware of the number of repetitions in which plaintiff engaged during the course of a shift. Dr. Dols was not able to state to a reasonable degree of medical probability that plaintiff's shoulder complaints were characteristic of and peculiar to his employment with defendant-employer or that plaintiff was at a greater risk of developing an injury to his shoulder than the general public.
9. Al Gorrod, an expert in ergonomics and occupational therapy, reviewed a written description of plaintiff's job as well as visited the General Tire plant where he observed several employees of various heights perform the single-stage tire builder job. The job review at General Tire revealed the tire builder job was not repetitious. Furthermore, the job did not require plaintiff to perform motions with his arms that placed him at risk for developing a shoulder injury. Based upon his experience and his observations, Mr. Gorrod indicated that plaintiff's employment did not place him at greater risk for developing a shoulder injury than the general public nor did he believe that a shoulder injury such as plaintiff's was characteristic of or peculiar to plaintiff's employment.
10. Plaintiff was out of work from September 20, 1997 until August 2, 1998 as a result of his shoulder injury. During that time, plaintiff received disability compensation through the company's fully funded sickness and accident plan. Plaintiff received $305.00 per week for a total of $13,027.85.
11. Plaintiff has returned to work for defendant-employer and continues to perform his duties as a tire builder.
12. The greater weight of the evidence fails to establish that plaintiff's employment with defendant-employer caused or significantly contributed to the development of plaintiff's shoulder condition. Moreover, the greater weight of the evidence fails to establish that plaintiff's employment with defendant-employer placed him at an increased risk of developing a shoulder condition as compared to the general public not so employed.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
The greater weight of the evidence fails to establish that plaintiff's employment with defendant-employer caused or significantly contributed to the development of plaintiff's shoulder condition. Moreover, the greater weight of the evidence fails to establish that plaintiff's employment with defendant-employer placed him at an increased risk of developing a shoulder condition as compared to the general public not so employed. Accordingly, plaintiff has failed to prove by the greater weight of the evidence that he sustained an occupational disease arising out of and in the course and scope of his employment with defendant-employer. N.C. GEN. STAT. § 97-53(13); Hansel v. Sherman Textiles, 49 N.C. App. 1,270 S.E.2d 585 (1980), rev'd. on other grounds, 304 N.C. 44, 283 S.E.2d 101
(1981).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is hereby and under the law must be DENIED.
2. Each side shall pay its own costs.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER