* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Deceased Plaintiff and Defendant-Employer on or about September 8, 2000.
3. On this date, Liberty Mutual Insurance Company was the carrier on the risk.
4. On this date, Plaintiff sustained an injury to her neck and low back and the claim was accepted as compensable.
5. The employee's average weekly wage was $243.00, yielding a corresponding compensation rate of $162.00.
6. Plaintiff died on April 23, 2005, and the parties have stipulated to the entry of Plaintiff's death certificate into the record.
 * * * * * * * * * * * EXHIBITS
1. In addition, the Parties also submitted the following exhibits to the Deputy Commissioner:
 a. Stipulated Exhibit 1 — copies of the Plaintiff's medical records and various Industrial Commission filings paginated in a black folder as pages 1 through 298.
 b. Plaintiff's Exhibit 1 — copy of a note from Dr. Pearce dated 4/14/05.
 * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On September 8, 2000, Plaintiff was employed by Kohl's Department Store as a sales associate. On that date, she tripped over a fan in the break room, causing her to fall on all fours.
2. Plaintiff sustained injuries to her neck and low back, and the claim was accepted as compensable.
3. Plaintiff had a history of chronic fatigue syndrome and fibromyalgia and had treated for these symptoms for many years prior to her compensable claim. Defendants denied treatment for these pre-existing conditions.
4. On April 23, 2005, Plaintiff died in her sleep and her widower contends her death was due to causes and conditions related to her workplace injury.
5. Plaintiff had been under the care of Dr. Larry Pearce since 1990 for severe temporal headaches, pain in her neck, low back, left shoulder and arm, the left hip, visual blurring, tinnitus, tingling and numbness in both hands, weakness and general fatigability of her upper extremities and equilibrium problems.
6. As early as November 30, 1992, Plaintiff began complaining of being fatigued and having difficulty sleeping. Dr. Pearce indicated that Plaintiff had a total loss of vocational ability/quality of life and estimated she was 60% disabled as a result of an injury she sustained on June 28, 1990.
7. Plaintiff continued to treat with Dr. Pearce for headaches, fatigue, neck pain, low back pain, urinary frequency, and depression throughout 1993 and 1994.
8. On March 6, 1995, Dr. Pearce indicated Plaintiff would need pain medications the rest of her life to have any quality of life.
9. As early as December 16, 1999, Plaintiff had been given a diagnosis of fibromyalgia.
10. After her workplace injury, Plaintiff sought treatment with Dr. Jerome Davis at Battleground Urgent Care on September 18, 2000 where she was diagnosed with acute lumbosacral strain and left knee strain. Said injury was accepted by the Defendants and Plaintiff was receiving workers' compensation benefits.
11. Plaintiff was referred to Dr. John Krege at Piedmont Orthopedics who indicated she had degenerative disc disease at C6-7 and probably neck sprain which would resolve, and found no definite deficit. Dr. Krege also indicated she had low back sprain without definite deficit and trochanteric bursitis on the left which could be associated with L4-5 nerve root irritation.
12. A lumbar MRI was performed October 23, 2000, which showed degenerative disc disease at L3-4 and L4-5.
13. A cervical MRI was performed November 30, 2000 which showed spondylosis at C4-5, 5-6 and 6-7 without spinal cord impingement and diffuse disc bulge at C6-7.
14. Plaintiff went through a course of physical therapy and had nerve conduction studies performed on February 13, 2001, which were normal.
15. Dr. Mark Yates at Piedmont Orthopedics released Plaintiff at maximum medical improvement on February 23, 2001 with a 0% permanent partial disability rating.
16. Plaintiff continued to treat with Dr. Davis and Dr. Pearce from 2002 until she died in 2005.
17. Although Dr. Pearce did not pronounce Plaintiff dead, or examine the body, Dr. Pearce signed the death certificate and indicated the immediate cause of death was obstructive sleep apnea — 1 to 3 months. The secondary cause was chronic fatigue syndrome, fibromyalgia — 5 years. An autopsy was not performed.
18. Dr. Pearce testified that most patients don't die from fibromyalgia or chronic fatigue syndrome and that Plaintiff did not die from these conditions. He was of the opinion that Plaintiff died of obstructive sleep apnea. Dr. Pearce never made a diagnosis of sleep apnea during his 15 year span of treatment of the Plaintiff, and never ordered or performed a sleep study on the Plaintiff. He further testified that Plaintiff could have died of sleep apnea whether she had fibromyalgia or not, and that obstructive sleep apnea is not an extremely common cause of death. Dr. Pearce also indicated that: "It could be that Ann died from a myocardial infarction. I don't know absolutely that she died of sleep apnea." The Full Commission finds that the opinion of Dr. Larry Pearce that the deceased Plaintiff died as a result of complications of her work related injury is speculative and, thus, affords little weight to his opinions regarding the issue of causation.
19. An independent medical record review was performed by Dr. Jeffrey Siegel on November 11, 2005. In addition to being a neurologist himself, Dr. Siegel is also on the Medical Advisory Committee for the North Carolina Industrial Commission. Dr. Siegel was provided and reviewed Plaintiff's medical records presented to the Industrial Commission and the deposition transcript of Dr. Larry Pearce. Dr. Siegel indicated that there is no compelling evidence that Plaintiff had obstructive sleep apnea. Ms. Brady never underwent a polysomnogram and an abnormal polysomnogram is generally regarded as necessary to establish this diagnosis.
In addition, Dr. Siegel indicated that it could not be demonstrated, to any degree of medical probability, that Plaintiff's "fibromyalgia" was significantly exacerbated by her workplace injury. The Full Commission assigns little weight to the speculative opinions of Dr. Siegel, who had never physically examined the plaintiff, and merely provided a posthumous medical review.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Proof of a causal connection between the disease and the employee's occupation is an essential element in proving the existence of an occupational disease. Hansel v. Sherman Textiles, 49 N.C. App. 1, 270
S.E.2d 585 (1980). Plaintiff in the present matter has failed to prove by the greater weight of the evidence of record that her obstructive sleep apnea and fibromyalgia conditions were occupational diseases that were caused by or arose out of her employment with the Defendant-Employer. See Id. and N.C. Gen. Stat. § 97-53.
 * * * * * * * * * * * AWARD
1. Plaintiff's claim under the law must be, and is hereby, DENIED.
2. Defendants shall pay the costs, including an expert witness fee of $850.00 to Dr. Larry Pearce, if not already paid by prior order.
This 15th day of December 2006.
S/_______________________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________________________________ DIANNE C. SELLERS COMMISSIONER