CLIFFORD J. LOCKWOOD v. EARL McCASKILL; AND CHARLES ALBERT MACON, D/B/A C. A. M. MACHINE COMPANY.

(Filed 4 November, 1964.)

**1. Evidence § 44—**

It is proper for a medical expert to testify from his own knowledge or from facts assumed in a proper hypothetical question, or in part upon such hypothetical facts and in part on statements made by the patient in the course of a professional examination, that a particular cause could or might have produced the result in question when the testimony indicates a reasonable probability in that particular scientific field, but an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility.

**2. Same— Testimony of an expert to the effect that amnesia was probably the result of injury held competent.**

Non-expert evidence tended to show that plaintiff suffered pain, had severe headaches, and was incapacitated to work in a supervisory capacity

for more than two months as a result of the injury. Plaintiff's expert witness testified on direct examination that the accident may have induced plaintiff's subsequent amnesia, but on cross-examination the expert testified that the amnesia was induced by a deep sense of insecurity, that plaintiff was unusually sensitive to conditions which threatened his security, and that the injuries suffered in the accident and the financial burdens caused by his physical incapacity produced mental stress resulting in the amnesia attack. *Held:* The expert testimony, taken in connection with the non-expert testimony, is competent as tending to show that the amnesia attack was a probable result of the injury.

**3. Damages § 3—**

Ordinarily, if defendant's act would not have resulted in any injury to an ordinary person, defendant may not be held liable for the harmful consequences of his act to a plaintiff of peculiar susceptibility except insofar as defendant was on notice of the existence of plaintiff's susceptibility; if defendant's act amounted to a breach of duty to a person of ordinary susceptibility, defendant is liable for damages suffered by plaintiff, notwithstanding that these damages were unusually extensive because of plaintiff's peculiar susceptibility.

**4. Same—**

Where defendant's negligence causes physical injury and suffering to the plaintiff, defendant is liable for all the consequences which are the natural and direct result of his conduct, even though a part of such result occurs because of plaintiff's peculiar susceptibility of which defendant had no knowledge.

APPEAL by defendant Charles Albert Macon from *Campbell, J.,* June 15, 1964, "B" Session of MECKLENBURG.

Action to recover for personal injury and property damage resulting from a collision of motor vehicles, allegedly caused by the negligence of defendants.

About 10:30 P.M., 11 February 1963, a truck owned by defendant Macon, and being operated by his agent, defendant McCaskill, ran into the rear of plaintiff's automobile while plaintiff was stopped and waiting for a traffic light to change at the intersection of Independence Boulevard and Pecan Avenue in the City of Charlotte. Plaintiff was injured and his automobile damaged.

Summons was duly served on defendant Macon 14 May 1963, but no service was had on McCaskill. Macon failed to answer or otherwise plead, and judgment by default and inquiry was entered against him on 24 June 1963. The case came on for trial solely on the issue of damages; Macon was represented at the trial and contested the amount of the damages. The jury awarded plaintiff $5000, and judgment was entered accordingly. Defendant Macon appeals.

*H. Parks Helms for plaintiff appellee.*

*Kennedy, Covington, Lobdell & Hickman and Charles V. Tompkins, Jr., for defendant Charles Albert Macon, appellant.*

MOORE, J. Appellant assigns as error the admission of the testimony of plaintiff that he suffered an attack of amnesia on 20 May 1963, the overruling of appellant's objection to a hypothetical question and Dr. Thomas H. Wright's response thereto relating to plaintiff's amnesia, the denial of the motion to strike all evidence of amnesia, and the refusal to instruct the jury not to consider such evidence in arriving at a verdict.

Plaintiff testified in substance: Immediately following the collision he was momentarily unconscious; he had pain in his back and left hip, loss of feeling in his left leg, a headache with pain not only in his head but down in his neck, and a "wobbly" feeling. For about 2½ months he was treated by two orthopedic specialists; he suffered much pain in his back, hip and leg and periodically had unusually severe headaches — he had never had headaches to any extent before, none of this kind. He operated a service station in Charlotte, and his injuries and condition kept him away from his business until 1 May 1963 except for occasional short visits to supervise operations. While he was away one of his employees wrecked a car belonging to a customer and he was forced to pay the damages in the amount of $1200. He worked full-time at the station from May 1 to May 20, 1963, but his activities were limited. He worried about his financial difficulties in meeting payrolls and other expenses; these worries, together with his pain and headaches, caused him trouble in sleeping at night. On the morning of May 20 he had a very severe headache at the base of his skull and took two aspirin tablets; he remembered nothing from about 10 o'clock that morning until he regained consciousness in Albemarle, N. C., on the following day. He had never had an attack of amnesia before. He was placed in Charlotte Memorial Hospital under the care of a psychiatrist, Dr. Thomas H. Wright, Jr. For some time he was depressed and confused. On June 15 he was discharged. While in the hospital he had an inflammation of his urinary bladder, causing him to remain there for two or three days longer than would otherwise have been required. Dr. Wright continued treatment until December. At the time of the trial he was fully recovered.

A hypothetical question was put to Dr. Wright in which he was asked if he had an opinion, based on the hypothesis, whether or not the accident was a "contributing factor to his (plaintiff's) attack of amnesia and depression on May 20, 1963, and his inability to carry on his work

and business." In response Dr. Wright stated that he had an opinion and his opinion was that "It may have had an influence on his condition." He explained further: "I feel like there were other contributing factors. . . . basically this man is an insecure person. He is a perfectionist. They worry more — a worrisome individual. The accident was a threat to his security, as well as the precipitating one is the loss of the automobile some several days before at which time his security was threatened and this is a factor. These are precipitating factors in an insecure individual." On cross-examination Dr. Wright stated: "This employee's . . . wrecking a car, . . . that financial burden, yes, seems to be one of the factors. I thought that was the precipitating factor. He . . . had an insecure feeling which, of course, existed long before this accident. . . . If he had been a normal person, this collision which resulted in some back pain . . . and some leg pain, would not have brought on amnesia."

The hypothetical question covers approximately three pages of the record. It is not free of technical fault. Indeed, perfect hypothetical questions are a rarity in the trial of cases. The one in this case is not sufficiently objectionable to render it prejudicial.

Appellant's main contention is that the non-expert testimony is insufficient to support the inference that the attack of amnesia, which occurred three months after the accident, was a result of the accident and the injuries suffered therein, and that the testimony of Dr. Wright with respect to such cause and effect is speculative, declares it a mere possibility, is not a sufficient predicate for any recovery of damages by reason of the attack of amnesia and concomitant depression, and defendant was therefore prejudiced by the admission of the evidence relating to amnesia and depression.

Appellant cites 135 A.L.R., Anno. — Expert Evidence as to Cause — Sufficiency, pp. 516-546. From this annotation the following principles appear. (1) It appears to be well settled that expert medical testimony that a given accident or injury *possibly* caused a subsequent impaired physical or mental condition — indicating mere possibility or chance of the existence of the causal relation — is not sufficient to establish such relation. *Ibid.,* p. 517. (2) There is a division of opinion as to whether expert medical testimony of the *probability* of such causal relation is sufficient. *Ibid.,* p. 529. (3) There are a number of cases, however, which have held that expert medical testimony of the *possibility* of such causal relation, in conjunction with non-expert testimony indicating that such relation exists (although not sufficient by itself to establish the relation), is sufficient to establish the causal relation. *Ibid.,* p. 532. We note that no North Carolina cases are cited or

discussed in this Annotation or in the volumes of "Supplemental Decisions."

The matter is also discussed in 20 Am. Jur., Evidence, as follows:

"An expert witness' view as to *probabilities* is often helpful in the determination of questions involving matters of science or technical or skilled knowledge. Expert testimony may be given in terms of an opinion that something might, could or would produce a certain result. It is necessary, however, that the facts upon which the expert bases his opinion or conclusion permit reasonably accurate conclusions as distinguished from mere guess or conjecture. Expert opinion testimony should not be allowed to extend to the field of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions. An expert's opinion must be in the terms of the certain or *probable,* and not of the *possible.* Such witness is entitled to give his best judgment or opinion on the matter under inquiry, but not give answers which are mere guesses. . . . The allowance of opinion testimony of experts is, however, addressed to the discretion of the trial court, and under particular circumstances more or less conjectural opinions have been admitted, especially in cases calling for expert medical testimony," *Ibid.,* § 795, pp. 667, 668.

"A very liberal practice is indulged in permitting opinion testimony of experts on matters in the field of medical practice. A duly qualified physician may state, upon the basis of facts set forth in proper hypothetical questions, . . . his opinion as to the nature of the disease or disability from which a person is or was suffering, as to the facts and causes which probably produced, or might have produced such condition, as to how injuries or wounds were inflicted . . ." *Ibid.,* § 862, pp. 722, 723.

"Expert medical opinion should not be allowed to extend to the field of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions, such as what would have been the result of an injury to a sick child if it had been strong and well at the time of such injury." *Ibid.,* § 863, p. 725.

We now turn to pertinent rules and principles adopted and declared in this jurisdiction.

We said in *Williamson v. Bennett,* 251 N.C. 498, 503, 112 S.E. 2d 48, that "It is almost the universal opinion that recovery may be had for mental or emotional disturbance in ordinary negligence cases where, coincident in time and place with the occurrence producing the mental

stress, some actual physical impact or genuine physical injury also resulted directly from defendant's negligence. . . . But the emotional disturbance and nervous disorder must be the *natural and proximate result of the injury as it affects plaintiff himself.*" (Emphasis added.)

*Ford v. Blythe Brothers Co.*, 242 N.C. 347, 87 S.E. 2d 879, was an action for damages by a 3-year old child who was burned by live coals when she walked into a bed of apparently harmless ashes. Before the accident she slept and ate well and was not nervous; after the injury she was excitable, afraid of noises, and neither ate nor slept well. Two medical experts testified that the injuries sustained by the child could cause traumatic neurosis or personality shock. The opinion states: "We think the testimony of these experts . . . was admissible, particularly in view of the other testimony offered by the plaintiff . . . The fact that these experts further testified that the experience encountered by the plaintiff in connection with her injuries might or might not result in traumatic neurosis or personality shock to her, goes to the weight of their testimony rather than to its admissibility."

With respect to hypothetical questions propounded to expert witnesses, the rule in North Carolina is that "If the opinion asked for is one relating to cause and effect, the witness should be asked whether in his opinion a particular event or condition *could* or *might* have produced the result in question, not whether it did produce such result." Stansbury: North Carolina Evidence (2d Ed.), § 137, p. 332. (Emphasis ours.)

The "could" or "might" as used by Stansbury refers to probability and not mere possibility. It is contemplated that the answer of the expert will be based on scientific knowledge and professional experience. *Moore v. Accident Assurance Corporation*, 173 N.C. 532, 92 S.E. 362; *Raulf v. Light Co.*, 176 N.C. 691, 97 S.E. 236. The expert witness draws no inferences from the testimony; he merely expresses his professional opinion upon an assumed finding of facts by the jury. *Godfrey v. Power Co.*, 190 N.C. 24, 128 S.E. 485. The expert may testify as to the causes capable of producing the result and whether or not the particular hypothesis was a capable cause. *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818. A medical expert may base his opinion in part upon statements made to him by the patient in the course of professional examination and treatment and in part on the hypothetical facts. *Penland v. Coal Co.*, 246 N.C. 26, 97 S.E. 2d 432. The opinion is based on the reasonable probabilities known to the expert from scientific learning and experience. A result in a particular case may stem from a number of causes. The expert may express the opinion that a particular cause "could" or "might" have produced the result — indicating that the re-

sult is capable of proceeding from the particular cause as a scientific fact, *i. e.,* reasonable probability in the particular scientific field. If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken. The trial judge is not, of course, required to make subtle and refined distinctions and he has discretion in passing on the admissibility of expert testimony, and if in the exercise of his discretion it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation, is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony *per se* does not show that the causal relation is merely speculative and mere possibility, the admission of the testimony will not be held erroneous.

It was stipulated that Dr. Wright is an expert in the field of psychiatry. It must be assumed that the text and substance of his testimony are scientific fact. Our concern is whether his testimony clearly shows that it is mere possibility or conjecture that plaintiff's attack of amnesia was produced as a direct result of the injuries suffered by him in the accident in question. If so, the testimony should have been excluded.

Dr. Wright's direct answer to the hypothetical question was: "It (the accident) may have had an influence on his condition." This statement, considered alone, does not indicate a reasonable scientific probability that the attack of amnesia resulted from plaintiff's physical injuries. In this view of the matter the evidence is not admissible.

However, Dr. Wright's further explanation, especially his testimony on cross-examination, puts a different light on the matter when considered with the non-expert testimony in the case. Dr. Wright testified in effect that the attack of amnesia was induced by a deep sense of insecurity, that plaintiff is by nature a perfectionist and for that reason is unusually sensitive to occurrences and conditions which threaten his security and is prone to worry, the injuries he suffered in the accident and the financial burdens and losses caused by his physical incapacity to work and attend to his business threatened his security and produced mental stress and worry, and this mental state set the stage for the amnesia attack, which was precipitated when one of his employees wrecked a customer's car, costing him $1200. There is non-expert testimony tending to show that plaintiff suffered pain in his back and leg, had severe headaches, slept poorly and was incapacitated to work and

supervise his service station business for more than two months. Some of his work had to go undone, the business was not properly supervised, and plaintiff had extreme difficulty in meeting the additional expenses entailed by his absence. The financial worries and mental stress and strain resulted directly from plaintiff's injuries and incapacity to work.

Dr. Wright stated: "If he (plaintiff) had been a normal person, this collision which resulted in some back pain and did not require hospitalization at that time and some leg pain, would not have brought on amnesia." The psychiatrist is saying that the accident and resulting physical injuries would not have caused amnesia in a person with ordinary susceptibility to worry and insecure feelings, but that plaintiff is more than ordinarily prone to suffer from these mental conditions and therefore the physical injuries were a cause which produced the conditions.

The general rule is that if the defendant's act would not have resulted in any injury to an ordinary person, he is not liable for its harmful consequences to one of peculiar susceptibility, except insofar as he was on notice of the existence of such susceptibility, but if his misconduct amounted to a breach of duty to a person of ordinary susceptibility, he is liable for all damages suffered by plaintiff notwithstanding the fact that these damages were unusually extensive because of peculiar susceptibility. 64 A.L.R. 2d, Anno.: Torts-Emotional Disturbances, p. 131; 15 Am. Jur., Damages, § 81, p. 490. The measure of duty in determining whether a wrong has been committed is distinct from the measure of liability when the wrong has been committed. *Spade v. Lynn & B. R. Co.*, 52 N.E. 747 (Mass.).

From the testimony of the psychiatrist and the non-expert witnesses in the case it was permissible, but not compulsory, that the jury infer that the physical injuries suffered by plaintiff were the direct cause of his intense mental distress, worry and sense of insecurity, and that the mental distress and sense of insecurity were a factor in producing the amnesia, without which factor the amnestic condition would not have occurred. In this view of the matter, the challenged evidence was competent and admissible. A tort-feasor is liable to the injured party for all of the consequences which are the natural and direct result of his conduct although he was not able to have anticipated the peculiar consequences that did ensue. *Riddle v. Artis*, 243 N.C. 668, 91 S.E. 2d 894; *Richardson v. Cooke*, 238 N.C. 449, 78 S.E. 2d 208.

No error.