GLEN DOLEN LAWRENCE, T/A LAWRENCE NURSERY v. RELIANCE INSURANCE COMPANY

No. 769DC718

(Filed 2 March 1977)

1. Insurance § 76— fire damage — cost of repairs — replacement cost — cash value

In an action to recover under an insurance policy for damages to a tractor allegedly caused by fire wherein it was disputed whether all damages to the tractor were caused by the fire, evidence of the cost of all repairs to the tractor, the purchase price of the tractor, and the fair market value of the tractor before and after the fire was relevant to show that the cost of repairs was less than the cash value or replacement cost within the provision of the policy limiting defendant insurer's liability under the policy.

2. Trial § 10— expression of opinion — harmless error

Where a witness testified he was not undertaking to tell the jury that he knew the cause of a tractor fire, the trial judge's comment that he thought "that's exactly what he has done" did not constitute a prejudicial expression of opinion on the evidence since the observation made by the court was so apparent to the jury that any error was harmless.

3. Evidence § 48— qualification of expert — ruling by implication

The trial court by implication ruled that a witness was an expert where plaintiff offered the witness as an expert and asked him questions regarding his qualifications, and the trial court overruled defendant's objection to a hypothetical question asked the witness.

4. **Evidence § 49— expert testimony — possible cause**

  The trial court did not err in permitting plaintiff's expert witness to testify "that it was possible that the fire damaged the interior of the engine" where the testimony was in response to a question as to whether the fire "could" have caused the damage to the engine.

5. **Insurance § 76— fire damage to tractor — deductible**

  In an action to recover under an insurance policy for fire damage to a tractor, the trial court erred in entering judgment on the verdict without reducing the amount of the verdict by the amount of a "deductible" set forth in the policy.

APPEAL by defendant from *Peoples, Judge*. Judgment entered 7 May 1976 in District Court, VANCE County. Heard in the Court of Appeals 10 February 1977.

In this action plaintiff seeks to recover under a policy of insurance issued by defendant for damages to his International 150 tractor loader caused by fire or collision. Defendant denied that the damage was caused by fire, alleging that it was caused from the tractor becoming overheated.

Plaintiff was allowed to amend his complaint to allege in the alternative that the oil pan of his tractor was struck by a piece of timber or similar object, resulting in a bending of the oil pan which in turn caused the piston rod to knock a hole in the pan, allowing dirt to sift through the engine in sufficient quantity to cause extensive damage.

At trial the insurance policy was introduced into evidence. Pertinent provisions of the policy indicate coverage for damages caused by fire or collision, with exclusions for losses "caused by or resulting from mechanical or structural breakage or failure; wear and tear . . . gradual deterioration or depreciation." The policy also limits defendant's liability to the actual cash value of the property at the time of the loss, but in no event to exceed the cost of repairs to, or replacement cost of, the machine. Plaintiff offered further evidence tending to show:

He purchased the tractor in 1969 for $25,000 and in 1970 purchased the insurance policy in question from defendant. The fair market value of the machine before and after the fire was $17,500 and $14,000 respectively. On 13 April 1971 he loaned the tractor to a neighbor, Charles King, for the purpose of loading some dirt. King's employee, James Ayscue, drove the tractor about 50 to 75 yards, over some timbers (either two by fours or one by fours) and had loaded one load of dirt when

he noticed the engine heating up; he turned the engine off and as he was walking away to get some water for it, he noticed that the tractor was on fire. Ayscue and King poured several buckets of water on the tractor around the engine but the fire continued to burn for some fifteen minutes. The fire appeared to be coming from the belly pan located under the oil pan, both of which were underneath the tractor. After the fire, oil was seen on the ground under the tractor and the hoses and wires on the engine were burned.

The tractor was taken to Raleigh for repairs; after it had been dismantled plaintiff saw that the oil pan had a hole in it and was bent upwards so that the rod would hit it each time it came down. W. H. O'Neal was the foreman in charge of making the repairs and plaintiff paid a bill for the repairs in the amount of $2,657.04.

At the time of the fire the tractor had been operated approximately 1100 hours and had never overheated before. The machine had been carefully and regularly maintained by the changing of the oil and air filters at least every three weeks. In the opinion of Willie Hill, accepted by the court as an expert in the field of heavy equipment maintenance, it was possible that a fire on the tractor would damage it to the extent of the repair work specified in the bill paid by plaintiff.

Defendant's evidence consisted primarily of the testimony of O'Neal whom the court qualified as an expert on International 150 tractor loaders. He testified in pertinent part: In his opinion the only damage to the tractor caused by fire was the burning of the hoses, wires and paint, the repair of which cost $672.30; and that the other parts which he repaired, the crankshaft, pistons, sleeves and oil pump, were worn out from lack of maintenance and the use of dirty oil. In his opinion the dirt got into the oil through the hole in the oil pan but it probably took two or three days for the dirt to get in and damage the engine. Normally a machine similar to plaintiff's would go 3,000 to 4,000 hours before needing any major overhaul, but plaintiff's machine had worn out much quicker due to the dirty oil. Every part listed on the repair bill *could* have been damaged by fire if it got hot enough, but, in his opinion, in this particular case the main damage was not caused by fire.

Issues were submitted to and answered by the jury as follows:

1. Was the plaintiff's International 150 Tractor damaged by fire within the meaning of the insurance policy as alleged in the complaint?

ANSWER: Yes.

2. If so, in what amount?

ANSWER: $2,657.04.

3. Was the plaintiff's 150 International Tractor damaged by collision within the meaning of the insurance policy as alleged in the complaint?

ANSWER: (No answer)

4. If so, in what amount?

ANSWER: (No answer)

From judgment entered on the verdict in favor of plaintiff in the sum of $2,657.04, plus interest from date of judgment, and costs, defendant appealed.

*Perry, Kittrell, Blackburn & Blackburn, by Charles F. Blackburn, for plaintiff appellee.*

*Teague, Johnson, Patterson, Dilthey & Clay, by T. Edward Johnson, for defendant appellant.*

BRITT, Judge.

[1] Defendant contends the court erred in allowing plaintiff to testify that the cost of repairs to his tractor was $2,657.04 and in admitting into evidence an itemized statement of the repairs. Defendant argues that said evidence allowed the jury to infer that all damages resulted from the fire. We find no merit in the contention.

The policy limited defendant's liability to the cost of repairs, provided said cost was less than the actual cash value of the tractor or its replacement cost. Plaintiff showed that the actual cash value and replacement cost of the tractor were considerably more than the cost of repairs, therefore, evidence with respect to the cost of repairs was relevant. Furthermore, any error was rendered harmless in view of subsequent testimony by defendant's witness O'Neal who pointed out the items on the statement which defendant claimed were not caused by the fire. In fact, during the trial defendant admitted its

liability for $672.30, the cost of replacing burned items on the outside of the motor, and defendant used the statement to designate items for which it admitted liability.

Defendant contends the court erred in allowing plaintiff to testify as to the fair market value of the tractor before and after the fire and in admitting into evidence certain documents showing the purchase price of the tractor. This contention has no merit. As indicated above this evidence was relevant to show that the cost of repairs was less than the value of the tractor or the cost of replacement.

[2]    Defendant contends that the court erred in that it expressed an opinion on the evidence. The record reveals that during the cross-examination of plaintiff's witness Jimmy Lawrence, the witness stated that he thought the fire could have been caused by the rod hitting the bent oil pan. Defendant's attorney then asked, "In other words, you yourself, are not undertaking to tell the jury that you know what caused the fire?" Lawrence replied, "No." The court then interjected, "Well, I think that's exactly what he has done." We find no merit in this contention.

It was very apparent to the jury that defense counsel had elicited an inconsistent statement from the witness. While it would have been better for the court not to have commented, we think the observation made by the court was so apparent to the jury that any error was harmless.

Defendant contends the court committed reversible error in allowing plaintiff's witness to testify as an expert witness "that it was possible that the fire damaged the interior of the engine." We find no merit in this contention.

[3]    Testimony challenged here was given by plaintiff's witness Hill. Defendant argues first that the court never declared the witness to be an expert on engines of the type in question but we think the court did so by implication. The record reveals that plaintiff offered the witness as an expert and asked him numerous questions regarding his qualifications. The witness was then asked a hypothetical question, defendant objected, the court overruled the objection and the witness answered. Defendant then moved to strike the answer and the motion was overruled. In 1 Stansbury's North Carolina Evidence, Brandis Revision, § 133, p. 431, we find:

"Objection that the witness is not qualified as an expert is waived if not made in apt time. The absence of a record finding in favor of his qualification is no ground for challenging the ruling implicitly made by the judge in allowing him to testify. In such a case, at least if the record indicates that such a finding could have been made, it will be assumed that the judge found him to be an expert, or that his competency was admitted, or that no question was raised in regard to it."

[4] Defendant next argues that under authority of *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E. 2d 541 (1964), it was entitled to have the witness' answer stricken. We disagree. The record reveals that the pertinent hypothetical question was ended as follows:

"Have you an opinion, satisfactory to yourself, assuming that further, that the jury should find as a fact that after the fire on April 13th, repairs were made to this tractor requiring labor and parts as shown on plaintiff's Exhibit Number 2. Have you an opinion, satisfactory to yourself, as to whether fire could cause damage to the tractor to the extent that repairs requiring the labor and parts specified in plaintiff's Exhibit Number 2 would be necessary?"

The witness was then asked if he had an opinion, he replied that he did and when asked to give his opinion stated, "I think that it's possible that the fire would damage the pistons and the sleeves and gaskets and everything about an engine resulting from the heat."

Defendant insists that Mr. Hill's answer violated the North Carolina rule restated in *Lockwood* that "if the opinion asked for is one relating to cause and effect, the witness should be asked whether in his opinion a particular event or condition *could* or *might* have produced the result in question, not whether it *did* produce such result"; and that *Lockwood* holds that the "could or might" stated in the rule refers to probability and not mere possibility.

In 1 Stansbury's North Carolina Evidence, Brandis Revision, § 137, pp. 453-455, we find:

"If the opinion asked for is one relating to cause and effect, the witness should be asked whether in his opinion

a particular event or condition *could* or *might* have produced the result in question, not whether it *did* produce such result. A question in the latter form has been thought to be objectionable as invading the province of the jury, although a more plausible (but still unconvincing) objection would seem to be that it unwarrantedly excludes the possibility of some other cause not referred to in the hypothetical question. In any event, the rule is an unfortunately technical one, and in several cases the Court has avoided its application by drawing narrow distinctions or by finding that any error in admission was harmless. Though currently a rigid observation of the rule is the only safe course for counsel to follow, it is devoutly to be hoped that the Court will soon find an occasion to abandon it, thus allowing a witness to make a positive assertion of causation when that conforms to his true opinion, reserving 'could' and 'might' for occasions when he feels less certainty."

We do not think *Lockwood* controls defendant's contention in the instant case. First, we note that in *Lockwood,* where plaintiff was seeking recovery for personal injury, plaintiff's medical expert witness was asked if he had an opinion, based on the hypothesis stated, whether the accident was a "contributing factor" to plaintiff's attack of amnesia and depression on a specified date and his inability to carry on his work and business. The witness responded that "it *may* have had an influence on his condition." (Emphasis ours.) Although the court restated the rule and used the language set out above, it failed to find error in the question propounded to, and the answer given by, the medical expert.

In the second place, the rule addresses itself to the question asked and not necessarily the answer given. It will be noted that in the case *sub judice* the witness was asked if he had an opinion whether the fire *could* have caused the damage to the motor complained of. Although the witness used the term "possible" in his answer, we think the effect of the use of the word in his answer was tempered by the wording of the question.

In the third place, we think any error the court committed in not striking the answer was rendered harmless by the testimony given without objection by defendant's witness O'Neal on cross-examination as follows:

Lawrence v. Insurance Co.

"Oh yes, if it gets hot enough heat can damage. If fire gets hot enough, it can cause a crankshaft to warp, a piston rod to melt, and a piston to crack. Well, if a piston becomes too hot, it can lose its tension in the ring. It's true that every part that is placed in my bill could have been damaged by fire if it got hot enough . . . . "

Defendant contends the court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict in the amount of $672.30, the amount tendered by defendant. Defendant argues that plaintiff's evidence failed to establish a collision claim and yet the jury evidently considered the damages complained of as being caused by a collision of the tractor with timber. This contention has no merit. The policy provided coverage for damage caused by collision or fire and plaintiff's evidence tended to show that all of the damage complained of was caused by fire and the jury verdict was returned on that contention.

Defendant contends the court erred in its instructions to the jury. We have carefully reviewed the instructions and conclude that when they are considered as a whole, they are free from reversible error.

[5] Finally, defendant contends the court erred in entering judgment on the verdict without reducing the amount of the verdict by $100, the amount of "deductible" set forth in the policy. This contention has merit, therefore, the amount of the judgment is hereby reduced to $2,557.04.

Except for the trial court's failure to give defendant credit for the $100, we find no error in the trial or judgment.

No error in trial; judgment modified and affirmed.

Judges HEDRICK and CLARK concur.