I respectfully dissent from the majority on several major issues and would vote to reverse the Deputy Commissioner's Opinion and Award in this matter. However, the undersigned would affirm the Deputy's ruling that, as a matter of law, the holding ofSalaam v. Dept. of Transportation, Salaam, 122 N.C. App. 83,468 S.E.2d 536 (1996), disc. review improvidently allowed, 345 N.C. 494,480 S.E.2d 51 (1997) does not apply to consensual ex parte communication between plaintiff's counsel and her non-party treating physicians. Thus, Drs. Finestone's and Nunn's depositions should not be excluded on this basis. The Supreme Court held in Lockwood v. McCaskill, 262 N.C. 663, 138 S.E.2d 541
(1964), that it is within the fact finder's discretion to admit expert medical testimony whenever "it reasonably appears to him that the expert witness is addressing himself according toscientific knowledge and experience ." (Emphasis added). While the depositions of Drs. Finestone and Nunn should be admissible as probative and meeting the Lockwood standard, issues of competency do remain that go to the weight afforded the depositions. See
Am.Jur. 2d 29 Evidence § 305 at 319.
Dr. Finestone, a psychiatrist, testifies "in a legal sense" and draws a legal conclusion that plaintiff's work injury caused her fibromyalgia. Finestone Depo. at 28, 78-79 (hereafter F. Depo at ___). Under Lockwood and Rule 702 of the N.C. Rules of Evidence, an expert's opinion is limited to those matters for which he is qualified "by knowledge, skill, experience, training, or education." Dr. Finestone is not a lawyer or trained in forensic medicine. Thus, he is not competent to testify to a legal conclusion and the undersigned gives no weight to his testimony regarding the causation of plaintiff's fibromyalgia. Dr. Nunn lacks board certification in any medical discipline, although he calls himself an "osteopathic psychiatrist." Nunn Depo. at 7, 11 (hereafter N. Depo. at ___). Throughout his testimony, Dr. Nunn exhibits a lack of knowledge about fibromyalgia in general and plaintiff's specific treatment from other treating physicians. See, e.g., N. Depo. at 15, 26, 52, 76-77. For these reasons, the undersigned accords little weight to his testimony regarding a causal link between plaintiff's fibromyalgia and her work-related injury.
Dr. Swinker is board certified in both family medicine and occupational medicine. Swinker Depo. at 6-8 (hereafter S. Depo. at ___). Dr. Gwinn is board certified in Physical and Rehabilitation Medicine. Gwinn Depo. at 6 (hereafter G. Depo. at ___). Dr. Rollins is a forensic psychiatrist who is board certified in ten areas of specialty, including psychiatry, forensic psychiatry, pain medicine and disability evaluation. Rollins Depo. at 7-8, 14-16 (hereafter R. Depo. at ___). Dr. Gwinn diagnosed plaintiff's low back pain as due to pre-existing lumbar degenerative disc disease. G. Depo. at 14, 17.
Dr. Swinker testified that plaintiff's "findings would come and go, move from place to place not a fixed pattern of deficits like you would see with an anatomic lesion" and that plaintiff's responses on physical examination exhibited a "conscious" effort to produce an abnormal result. S. Depo at 20-21, 24, 28. In light of her physical assessments, Dr. Swinker found that plaintiff had a psychological need to have pain. S. Depo. at 91. Even Dr. Finestone conceded that plaintiff's examination "shows an additional problem besides fibromyalgia (F. Depo. at 41) that "was most likely psychologically generated." F. Depo. at 108-109. Dr. Rollins also testified that plaintiff's pain was a symptom of unresolved psychological conflicts. R. Depo. at 57, 104. Dr. Rollins administered a psychological test, the MMPI-2, which revealed that plaintiff had "a great deal of psychological symptoms" of "fairly long standing." Id. at 35. Plaintiff reported childhood physical and sexual abuse by her father to Dr. Rollins that was "extremely traumatic to her .And she had conflicting unresolved feelings about it ." R. Depo. at 26. Plaintiff denied any prior psychiatric history (Tr. at 9), but on cross-examination, she admitted being seen at an area mental health center. Tr. at 91. The records reflect that plaintiff presented "depressed' and "despondent" over having "run away from home at age 15" and having been "forced" into "prostitution. Gwinn D. Ex. 4; Rollins D. Ex. 4.
For the reasons set forth herein, the undersigned gives greater weight to the opinions of Drs. Swinker and Rollins that plaintiff's pain disorder resulted from preexisting psychological causes and that plaintiff's psychological pain disorder was not caused, aggravated or accelerated by the work injury. R. Depo. at 58, 70, 96, 105; S. Depo. at 55-56, 105-106, 108-109. Dr. Rollins did state, however, that the May 30, 1995, work injury may have `triggered or precipitated" or "allowed the emergence of preexisting psychological problems." R. Depo. at 73. North Carolina law is settled, however, that a "triggering" event for an underlying psychiatric condition, without more, does not establish causation. Brewington v. Rigsbee Auto Parts, 69 N.C. App. 168,316 S.E.2d 336 (1984). For the reasons set forth supra, the undersigned finds that plaintiff's work injury of May 30, 1995, did not cause her fibromyalgia or pain disorder.
On September 5, 1995, the I.C. approved a Form 21 Agreement for "necessary weeks" for temporary total disability. On November 27, 1995, the IC approved a Form 26 Agreement designating payment of temporary partial disability. Drs. Swinker and Gwinn released plaintiff to light duty work in August 1995. S. Depo. at 39, G. Depo. at 27. Defendant-employer supplied plaintiff with light duty work within her restrictions commencing August 23, 1995. She worked off and on for about a month then failed to return to work. Plaintiff reached maximum medical improvement on October 20, 1995, with no permanent impairment. G. Depo. at 30. In a memo dated December 13, 1995, from Pat Dalton of Pitt County Hospital to Aegis, it states that "As of this date she has failed to return to work because she has requested a Family Medical Leave (granted) for an unrelated medical condition."
Once an award is made payable during disability by the IC, there is a presumption that the disability lasts until the employee returns to work. Watkins v. Central Motors Lines,279 N.C. 132, 181 S.E.2d 588 (1971). This presumption may be rebutted, however. Stone V. G.G. Builders, 346 N.C. 154,484 S.E.2d 365 (1997); see also IC Rule 404(1). Defendant-employer has rebutted this presumption of continuing disability by a showing that work suitable to plaintiff's medical condition was available for her and was offered to her since August 23, 1995. This work was approved by both Drs. Gwinn and Swinker. Therefore, the Deputy's Opinion and Award granting plaintiff permanent total disability benefits should be reversed.
The third issue on which the undersigned dissents is the majority's reformation of the Form 26 Settlement Agreement. In Finding of Fact No. 18, the majority modifies the Form 26 Agreement by changing an essential term of the contract from temporary partial disability to temporary total disability. The majority, without explanation, states that "the Commission does not have [to] make a finding regarding fraud, misrepresentation, undue influence, mutual mistake or that the Form 26 was improvidently approved" or that "plaintiff does not have to produce evidence of a change of condition in order to have the award modified." In Conclusion of Law No. 3, the majority finds that N.C. Gen. Stat. § 97-17 confers this jurisdiction on the Commission.
N.C. Gen. Stat. § 97-17, however, only allows for aset-aside of a settlement agreement based on fraud, misrepresentation, undue influence, or mutual mistake. There are no findings to this effect here, nor is there any evidence to support such a finding. Case law has carved out another niche under which a contracted settlement agreement may be set aside — if the Commission improvidently approved an agreement. See VernonV. Steven L. Mabe Builders, 110 N.C. App. 552, 430 S.E.2d 676
(1993). That is, if it did not act in a judicial capacity assuring that the Agreement was fair and not contrary to the intent of the Workers' Compensation Act, the agreement may be set aside. In Vernon, however, the plaintiff was illiterate, had a permanent partial disability, was unlikely to return to work and was unrepresented by counsel. Such is not the case here. In this matter, plaintiff has attended college, was a certified nursing assistant, was released to work with no permanent impairment and had counsel throughout the case. The Vernon analysis would fail under these facts. N.C. Gen. Stat. § 97-47 allows the Commission to review and change an award based on a plaintiff's change of condition. The majority has made no finding of a change of condition in plaintiff nor is there any evidence to do so under the facts presented here.
N.C. Gen. Stat. § 97-17 is silent on whether the Commission may modify an award under this section without first setting it aside. Case law, however, is unequivocal that an approved compensation agreement is binding on the parties unless and until
set aside by the Commission. Pruitt v. Knight Publishing, Co.,289 N.C. 254, 221 S.E.2d 355 (1976) (emphasis added).
Under the common law of contracts, a court may not make a new contract, rewrite a contract for the parties, or interpret the agreement as meaning something other than what the parties intended. Am. Jur. 2d, 17A Contracts § 340, 347-349 (1991). A court is not at liberty to either disregard words used by the parties in a contract or to insert words that the parties have not used. Id. at § 341 at 349-350. Absent statutory provision or case law to the contrary, a court may not modify a contract unless it is necessary to avoid a manifest injustice. Since the majority has made no finding of fraud, misrepresentation, undue influence or mutual mistake under N.C. Gen. Stat. § 97-17, no finding of a change of condition, and no finding of an improvidently approved settlement agreement, it is unclear as to the majority's legal grounds for reformation of the contract.
The contract as reformed by the majority has changed an essential term of the Form 26 Settlement Agreement. Defendant did not agree to this change. The reformed contract, therefore, lacks an essential element of contract formation — mutuality. "It is fundamental that a party cannot be held to have contracted if there was no assent .There must be mutual assent or a meeting of the minds on all essential elements or terms" Am. Jur. 2d, 17A Contracts § 26, 53-56 (1991). The majority incorrectly reforms the contract in such a way that defendant is bound to pay plaintiff compensation not only for that to which it agreed, but for that to which it clearly did not agree.
It has long been decided in the common law of contracts that lack of agreement on terms essential to the contract is a valid defense to contract formation. "There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed upon by which they can be settled, there is no agreement" (emphasis added). Croom v. Lumber Co., 182 N.C. 217,220; 108 S.E. 735, 737 (1921). The Form 26 Settlement Agreement, as reformed by the majority, is not a valid contract for the reasons set forth herein.
This ___ day of June 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER