The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. Additionally, the Full Commission accepted and considered as evidence the testimony of Phillip R. Holder, which the Deputy Commissioner had only accepted as an offer of proof. The appealing party has not shown good ground to reconsider the evidence in this matter. Having considered all of the evidence, including the testimony of Phillip R. Holder, the Full Commission affirms, with modifications, the Deputy Commissioners award of benefits and enters the following Opinion and Award:
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Hartford Specialty Risk Services, Inc. was the workers compensation carrier on risk at all relevant times herein.
4. Plaintiffs average weekly wage will be determined from a Form 22 to be provided by defendant-employer.
5. The issues to be determined at the hearing before the Deputy Commissioner are as follows:
a) Whether plaintiffs occupational diseases were caused by her job duties with defendant-employer?
b) If so, what, if any, workers compensation benefits is plaintiff entitled to receive as a result of the injuries sustained?
 ***********
Based upon all of the competent evidence and the reasonable inferences flowing from it, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 56 years old at the time of this hearing before the Deputy Commissioner. She had worked for the past 35 years for defendant-employer as a customer service representative.
2. Plaintiffs job required her to use a computer, keyboard and mouse, constantly either typing or looking up information concerning customers. On an average day she handled 60 calls which may include installing new service, handling complaints, connecting service, processing bills and other matters.
3. Plaintiff worked an eight-hour day, five days per week, and has done so throughout her career with defendant-employer.
4. In February 1996, plaintiff began to experience numbness and pain in her right hand. She reported this to her family physician, Dr. Trudy Shahady. Dr. Shahady referred her to Dr. Peter Hurley.
5. Dr. Hurley diagnosed plaintiffs condition as right lateral epicondylitis and right carpal tunnel syndrome. He treated plaintiffs condition with conservative means initially. When plaintiff did not respond to the conservative treatment, he performed a carpal tunnel release on plaintiffs right hand. After the initial period of recovery, plaintiff obtained relief of her pain and numbness following the surgery.
6. Dr. Hurley took plaintiff out of work on June 6, 1997. Dr. Hurley released plaintiff to return to half a day on July 7, 1997 and to a full day on July 18, 1997.
7. In the fall of 1997, plaintiff again began to experience pain and other problems with her right hand, arm and shoulder for which Dr. Hurley continues to treat. Dr. Hurley has recommended to plaintiff that she change jobs. Her condition is the result of the kind of work she does for defendant-employer.
8. Dr. Hurley rendered an opinion, and the Full Commission finds as fact, that plaintiffs job with defendant-employer placed her at an increase risk of developing both carpal tunnel and epicondylitis in her right hand and elbow. Plaintiffs condition developed as a direct result of her employment with defendant-employer and constitutes an occupational disease. Her work on a keyboard made it more likely that she would develop carpal tunnel syndrome and lateral epicondylisis than members of the general public whose job did not require them to use a keyboard.
9. Defendants retained the services of Phillip R. Holder, a vocational case manager with training in ergonomic analysis, to visit the plaintiffs work site and perform an ergonomic evaluation of plaintiffs job. Mr. Holder had an opportunity to observe plaintiffs workstation and the manner in which plaintiffs job duties were performed and rendered an opinion that plaintiffs job would not place her at an increased risk of developing carpal tunnel syndrome. The Full Commission gives greater weight, however, to the testimony of Dr. Peter Hurley, plaintiffs treating physician.
10. The medical care plaintiff has received for the treatment of her right carpal tunnel and right epicondylitis was necessary and has allowed her to return to work.
11. No evidence was submitted concerning plaintiffs average weekly wage at the relevant times herein. Defendants agreed pursuant to the Pre-Trial Agreement to provide a Form 22, and they are otherwise responsible for providing the Form 22, but they have failed to provide the same. Therefore plaintiffs compensation rate for purposes of this case shall be deemed to $512.00 per week, the maximum compensation rate for 1997, and the rate determined for plaintiff by the Deputy Commissioner. Defendants did not raise this issue on appeal from the Deputy Commissioner.
12. Plaintiff sustained a 6% permanent partial disability of her right hand and wrist as a result of her occupational diseases.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff developed the occupational diseases of right carpal tunnel and right epicondylitis as a direct result of her job with defendant-employer and her job placed her at an increased risk of developing these occupational diseases. Plaintiff is entitled to receive workers compensation benefits as a result of her occupational diseases. N.C. Gen. Stat. 97-53(13)
2. Plaintiffs compensation rate at the time of her injury was $512.00 per week.
3. Plaintiff is entitled to receive temporary total disability benefits for the periods of time she was taken out of work by her treating physicians as a result of the injuries she sustained.
4. Plaintiff is entitled to receive medical benefits for so long as they continue to effect a cure, give relief and/or lessen plaintiffs period of disability, subject to the limitations of N.C. Gen. Stat. 97-25.1. N.C. Gen. Stat. 97-25, 97-25.1.
5. A medical experts opinion to a reasonable degree of medical certainty that "a particular cause could or might have produced the result is sufficient too support an award to an employee. Buckv. Proctor Gamble Co., 52 N.C. App. 88, 94 S.E.2d 272 (1981). InLockwood v. McCaskill, 262 N.C. 663, 138 S.E.2d 541 (1964), the Supreme Court held that an experts opinion that a particular cause "could or "might have produced the result indicates that the result is capable of proceeding from the particular cause within the realm of reasonable probability. The Court further stated that the fact finder is not required "to make subtle and refined distinctions and that it is within his discretion to admit expert testimony whenever "it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation, is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony per se does not show that the causal relation is merely speculative and mere possibility. . . . Id. at 669,138 S.E.2d at 546.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee awarded in paragraph 4 below, defendants shall pay to plaintiff temporary total disability benefits at the rate of $512.00 per week beginning June 6, 1997 and continuing until July 7, 1997 and temporary partial benefits from July 7, 1997 through July 18, 1997. All accrued benefits shall be paid in one lump sum.
2. Defendants shall pay to plaintiff compensation at the rate of $512.00 per week for 12 weeks for the 6% percent permanent partial disability she sustained as a result of her occupational diseases. This amount has also accrued and shall be paid in a lump sum, subject to the attorney fees set forth in paragraph 4 below.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiffs period of disability.
4. An attorneys fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiffs counsel as reasonable attorneys fees. Defendants shall pay this fee directly to plaintiffs counsel.
5. Defendants shall pay the costs of this action.
This 22nd day of August 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER